The STATE of Ohio, Appellee,

v.

BURGE, Appellant.

[Cite as *State v. Burge* (1992), 82 Ohio App.3d 244.]

Court of Appeals of Ohio,
Franklin County.

Nos. 91AP–946, 91AP–1143.

Decided Sept. 3, 1992.

*Michael Miller*, Franklin County Prosecuting Attorney, and *Joyce S. Anderson*, Assistant Prosecuting Attorney, for appellee.

*James Kura*, Franklin County Public Defender, and *Allen V. Adair*, Assistant Public Defender, for appellant.

BOWMAN, Judge.

Defendant-appellant, Frank Burge, appeals his conviction and sentence on ten counts of engaging in a pattern of corrupt activity and theft in office. On count one, appellant was sentenced to an indefinite sentence of seven to twenty-five years and a $10,000 fine. On the remaining counts, appellant was sentenced to a definite sentence of two years on each count to be served consecutively. In addition, the court imposed a $3.9 million additional fine and ordered the forfeiture of property purchased with the stolen funds.

Appellant assigns the following as error:

"First Assignment of Error

"Entry of conviction and sentence for both engaging in a pattern of corrupt activity and the predicate offenses of theft and theft in office was contrary to R.C. 2941.25.

"Second Assignment of Error

"The court abused its discretion in imposing the maximum sentence allowed by law as a deterrent to others.

"Third Assignment of Error

"The 3.9 million dollar fine imposed pursuant to R.C. 2923.32(B) was excessive in amount and imposed in a manner contrary to the provisions of the statute.

"Fourth Assignment of Error

"The court erroneously overruled defendant's motion for a mistrial based on improper reference to a prior conviction in a transcript of his statement to highway patrol officers following his arrest.

"Fifth Assignment of Error

"The court erroneously overruled defendant's motion for a new trial.

"Sixth Assignment of Error

"The court erroneously instructed the jury that their determination whether or not items of real and personal property were subject to forfeiture was governed by the preponderance of the evidence standard of proof.

"Seventh Assignment of Error

"The order of forfeiture as to many of the items listed in the attachment to the indictment and subsequent amendment of the indictment to include additional items was against the weight of the evidence."

Prior to his arrest, appellant earned $40,000 per year as administrator of the Ohio Hospital Motor Vehicle Claims Program, an office which was responsible for using state money to reimburse hospitals for the care given indigent

victims of motor vehicle accidents. The program, which is an arm of the Ohio Department of Health and funded by the Department of Highway Safety, also employed one secretary and four field investigators. Although appellant's secretary was in the Columbus office with him, the investigators spent most of their time traveling throughout Ohio collecting information regarding claims and were only intermittently in the office.

Under the program, if a hospital which had been reimbursed by the state for the care of a particular patient later received insurance or other funds for that patient, the hospital would forward those amounts to the Hospital Motor Vehicle Claims office. It was then appellant's duty to deposit the income into the state treasury.

In late 1987, appellant opened up a checking account in the name of "Hospital Motor Vehicle Claims c/o Frank Burge" at the Charter Oak Federal Savings Bank, rented a post office box, and directed that hospital reimbursement checks be written to this account and mailed to the post office box. Appellant then used the money for cars, jewelry, stock, travel, and to support female dancers he had met at strip clubs. To account for the sudden change in lifestyle brought about by the diverted funds, he explained to his wife and others that he was moonlighting at a law firm, and that he had come into a large amount of money through an inheritance.

In March 1991, appellant was on vacation when investigator Gus Kallipolitis found a box of personal checks from the Charter Oak account in appellant's office. Knowing that the program neither utilized personal checks nor had an account with Charter Oak, Kallipolitis became suspicious and contacted another investigator. Together they contacted a third investigator who said she had also seen the checks, and the three decided to inform appellant's supervisor.

This information led to an investigation by the Ohio State Highway Patrol, which interviewed appellant on April 12, 1991. Upon learning of the allegation that he had embezzled state funds, appellant admitted to having diverted the money for his own use and made a tape-recorded confession. His arrest, trial and conviction followed.

Appellant's first assignment of error argues that his conviction and sentence on all the counts of the indictment violated R.C. 2941.25(A), which allows for a merger of allied offenses of similar import. That statute provides as follows:

"(A) Where the same conduct by defendant can be construed to constitute two or more allied offenses of similar import, the indictment or information may contain counts for all such offenses, but the defendant may be convicted of only one."

Appellant argues that, because the state had to prove two or more predicate offenses in order to prove appellant guilty of engaging in a pattern of corrupt activity and because the same set of facts supported the charges of racketeering, theft and theft in office, his conviction and sentence ·violated R.C. 2941.25(A). In other words, appellant claims the trial court erred by not merging the theft in office counts with the racketeering count.

In *State v. Comen* (1990), 50 Ohio St.3d 206, 553 N.E.2d 640, the defendant argued that charges of aggravated burglary and receiving stolen property were allied offenses of similar import, thus prohibiting his conviction and sentence on both offenses. The Supreme Court determined that the defendant's failure to object to the convictions or sentencing at the trial level resulted in a waiver of that claim on appeal. *Id.* at 207, 553 N.E.2d at 642.

Similarly, in the case at bar, appellant did not object at trial to his conviction and sentence on the basis that the offenses with which he was charged were allied offenses of similar import, and so waives the argument on appeal. Appellant's first assignment of error is overruled.

Appellant's second assignment of error asserts that the trial court's rationale for the severity of the sentence was to "send a message" to other potential government embezzlers, and that this motive constituted an arbitrary imposition of the maximum sentence, which was an abuse of discretion.

Generally, a court of appeals will not review the trial court's exercise of discretion in sentencing where the sentence falls within statutory limits. *Toledo v. Reasonover* (1965), 5 Ohio St.2d 22, 34 O.O.2d 13, 213 N.E.2d 179. Nevertheless, the trial court cannot disregard statutory criteria for sentencing without a suitable explanation. *State v. Flors* (1987), 38 Ohio App.3d 133, 140, 528 N.E.2d 950, 957.

Under R.C. 2929.12, the trial court was entitled to consider that appellant was a *repeat offender who had previously been convicted of a theft offense*, and that the state had suffered a severe economic injury as a result of the theft of over $1,000,000 of state funds. However, the trial court also could consider that appellant never threatened or caused physical harm, and that state practices in collecting such funds facilitated appellant's ability to commit the crime.

The court's statements upon sentencing indicate that the court did consider both the aggravating and mitigating factors in imposing sentence. For instance, the court disagreed with defense counsel's statement that "no one was harmed" by the theft, since both the initial loss of the funds and their inability to be recovered due to appellant's profligate lifestyle resulted in a significant economic loss to the state. In addition, the court specifically

mentioned appellant's previous conviction for theft. On the side of mitigation, the court recognized that, to a large extent, it was the state's policies and practices which enabled appellant to commit the crime.

■ Therefore, the trial court did not disregard the statutory sentencing factors in this case. Nor were the court's comments regarding "sending a message" inappropriate, since the court's intention was to deter others. R.C. 2929.12(D) provides:

"The criteria listed in divisions (B) and (C) of this section do not limit the matters that may be considered in determining the minimum term of imprisonment to be imposed for a felony for which an indefinite term of imprisonment is imposed."

Certainly among the factors that could be properly considered by the court is the deterrence of others, which is a legitimate goal of sentencing and an underlying basis for the criminal law. Because the sentence was within statutory limits and the court considered all the factors, there was no abuse of discretion in the court's stating a desire to deter others through the severity of the sentence. Appellant's second assignment of error is overruled.

Appellant's third assignment of error charges that the $3.9 million fine was excessive, since the state failed to prove appellant had stolen $1.3 million, or a third of the allowable treble damages under R.C. 2923.32. Under R.C. 2923.32(B)(2)(a) and (c), the trial court was empowered to "[i]mpose a fine not exceeding the greater of three times the gross value gained or three times the gross loss caused," such damages to be awarded after the court "hold[s] a hearing to determine the amount of fine, court costs, and other costs to be imposed under this division."

Specifically, appellant alleges that the trial court did not hold a hearing for the purpose of determining exactly what damages were appropriate, as he argues the statute requires, and that only perfunctory attention was given to what amount constituted the "gross value" or the "gross loss."

The record shows that the trial court did not hold a hearing solely for the purpose of determining the amount of fine, court costs, and other costs, but simply made its determination and award during the sentencing phase of the trial, which is insufficient to meet the requirements of R.C. 2923.32(B)(2); however, appellant did not raise an objection to the procedure followed by the court and, therefore, may be found to have waived this alleged defect. See *Comen.* This being the case, we find that, so long as the $1.3 million figure the trial court relied upon was actually supported by the evidence presented at trial, the $3.9 million fine was not excessive.

Appellant does not dispute the state's evidence that appellant had embezzled $1,165,963.27, which represented the amount traced from the hospitals to the Hospital Motor Vehicle Program by Clare A. Rubadue, Jr., a field audit supervisor for the Auditor of State. However, the state asserts there was also evidence presented by Cheryl Wooten, Charter Oak's vice president and regional manager, that bank statements from August 1987 to March 1991 indicated a total of $1,307,665 worth of deposit credits to the Charter Oak account. There is a difference of approximately $141,000 in these two figures.

This court has reviewed both Wooten's testimony and the Charter Oak account statements and notes that Wooten identified the statements, but never added the account totals. None of the state's witnesses explained the discrepancy between the hospital check total and the account credit total. Although the total amount of funds credited to the account does equal $1,307,665, the source of that amount is not apparent from the face of the account statements.

Considering the evidence as a whole, it would appear that the state was unable to account for the extra $141,000 in the account and was unable to directly trace this difference to monies paid to the Hospital Motor Vehicle Program by hospitals. Therefore, the inflated amount of funds in appellant's account cannot be utilized in calculating the treble damages permitted under R.C. 2923.32.

Inasmuch as appellant's third assignment of error argues that the $3.9 million treble damage amount inaccurately reflected the amount of funds actually stolen, appellant's third assignment of error is sustained.

Appellant's fourth and fifth assignments of error, combined for purposes of this appeal, raise issue with the trial court's failure to grant his motions for mistrial and for new trial.

During trial, the state presented the taped statement obtained from appellant on the day of his arrest as an admission by appellant that he had committed the offenses with which he was charged. The state also gave the jury a transcript of the tape, to allow it to follow the recording. Toward the end of the taped statement, appellant was asked about a prior theft conviction. Although the prosecution was prepared to, and did, stop the tape prior to introduction of this topic, the transcript held by the jurors included a transcription of that portion of the tape.

Upon realizing this, defense counsel moved for a mistrial. The trial court, not wishing to terminate proceedings, decided to conduct a voir dire of the jury and asked each juror individually if he or she had read ahead in the

transcript. Although several of the jurors had read ahead, none mentioned the passage in question, only appearing to have noticed some reference to appellant's son in that portion of the transcript.

Satisfied that the jury had not been tainted by the inclusion of this information in the transcript, the trial court overruled appellant's motion for mistrial and trial continued. At the conclusion of trial, appellant moved for a new trial on the grounds that the incident had denied him a fair trial. The trial court also overruled this motion.

■■ Our review of a decision to grant or deny a motion for mistrial is subject to the recognition that the trial court is in the best position to determine whether a mistrial is needed, and only where the court abuses its discretion is the decision subject to reversal. *State v. Glover* (1988), 35 Ohio St.3d 18, 19, 517 N.E.2d 900, 902. A mistrial should not be granted merely because some error or irregularity intervenes, unless a substantial right of the accused has been harmed. *State v. Reynolds* (1988), 49 Ohio App.3d 27, 550 N.E.2d 490. "Mistrials need be declared only when the ends of justice so require and a fair trial is no longer possible." *State v. Franklin* (1991), 62 Ohio St.3d 118, 127, 580 N.E.2d 1, 9. Similarly, a new trial should be granted only where it can be shown that the defendant's constitutional right to a fair trial has been compromised by some irregularity in the proceedings or abuse of discretion by the court. Crim.R. 33(A)(1).

■ In the case before us, the trial court spoke individually with each juror and alternate in the presence of counsel for both sides. Rather than tell the jurors exactly what defense counsel's concern was, the court indicated that there was some discrepancy between the recorded confession and the transcript, and asked the jurors if they had noticed this and, if so, to describe what they perceived. The court then asked whether the jurors had read ahead of the tape and, if so, what they remembered.

Juror one said he had read one sentence ahead, but could not remember what he read. Juror three stated she only remembered reading a question which asked whether appellant had anything else to say, and appellant's negative reply. Juror five stated that she had read ahead, but only remembered a statement about a young son at home having a drug problem. Jurors two, four, six, seven, nine, twelve and the alternates, jurors thirteen and fourteen, claimed not to have read ahead. Juror eight glanced at the section at issue, but said she paid little attention to the transcript and could not remember what she saw. Juror ten said he noticed something about a stepson, but could remember nothing else. Juror eleven stated she did not read the transcript at all.

The trial court was entitled to conclude from the voir dire that the jury had not been tainted by the objectionable material in the transcript, and that no prejudice to appellant or denial of his right to fair trial had resulted. Therefore the court did not abuse its discretion in denying both appellant's motion for mistrial and his motion for new trial. Assignments of error four and five are overruled.

Assignments of error six and seven address the issue of the forfeiture of property alleged to have been obtained using the embezzled funds. These assignments will be addressed together.

Appellant's sixth assignment of error charges that the court erred in instructing the jury to apply a preponderance of the evidence standard of proof in determining whether the property was subject to forfeiture. He argues that the trial court's instruction derived from federal racketeer influenced and corrupt organizations ("RICO") law, and that Ohio's equivalent, R.C. 2923.32, is sufficiently different from the federal law so as to require application of a beyond a reasonable doubt standard of proof.

The Ohio Supreme Court has recently addressed the question of the standard of proof in a forfeiture proceeding, stating that "even if * * * forfeiture is a criminal penalty, proof by a preponderance of the evidence is appropriate at the sentencing stage of a criminal proceeding." *State v. Casalicchio* (1991), 58 Ohio St.3d 178, 181, 569 N.E.2d 916, 920. Although in *Casalicchio* the court was addressing a forfeiture commenced under R.C. 2933.43, regulating seizure of contraband, rather than the statute at issue herein, we find that case's discussion of the burden of proof in a forfeiture proceeding to be apt.

In addition, appellant's claim that federal RICO and state RICO statutes differ so significantly as to exclude the state forfeiture statute from the recognized application of the preponderance of the evidence standard under federal law is not well taken. Ohio's RICO law is based upon and patterned after its federal counterpart. *State v. Thrower* (1989), 62 Ohio App.3d 359, 369, 575 N.E.2d 863, 869–870. "A RICO forfeiture requires a finding of personal guilt in a criminal prosecution; it is *in personam* and is imposed as punishment." *Thrower*, at 370, 575 N.E.2d at 871, citing R.C. 2923.32. Because proof by a preponderance of the evidence is appropriate at the sentencing phase, *Casalicchio*, citing *McMillan v. Pennsylvania* (1986), 477 U.S. 79, 84, 106 S.Ct. 2411, 2415, 91 L.Ed.2d 67, 75, and forfeiture under R.C. 2923.32 is a part of the imposition of sentence following a criminal conviction, preponderance of the evidence is the appropriate standard under R.C. 2923.32. Therefore, the trial court instructed the jury on the appropriate standard of proof.

Recognizing that appellant's failure to raise issue with the court's instruction during trial hampers his ability to argue this alleged error here, appellant urges us to find that the court's instruction was plain error and that this omission resulted in his receiving ineffective assistance of counsel. Not only did the court's instruction fail to constitute plain error, or any error at all, but appellant's counsel did not violate a duty to him or prejudice his case. We thus also reject these claims.

It remains whether the state proved forfeiture of the personal property at issue by a preponderance of the evidence. In his seventh assignment of error, appellant claims that the jury's forfeiture verdict was against the weight of the evidence, since the special verdict form did not sufficiently detail the items asserted as subject to forfeiture. In response, the state devotes fourteen pages of its brief to a description of the location in the record of the state's identification of the items alleged as subject to forfeiture.

R.C. 2923.32(B)(3) provides:

"In addition to any other penalty or disposition authorized or required by law, the court shall order any person who is convicted of * * * a violation of this section * * * to criminally forfeit to the state any personal or real property in which he has an interest and that was used in the course of or intended for use in the course of a violation of this section, or that was derived from or realized through conduct in violation of this section * * * and any property constituting proceeds derived from the violation * * *."

■ Therefore, under these facts, to subject the property in question to forfeiture, the state was required to prove (1) that appellant had an interest in the property; and (2) that the property (a) was used in the course of or intended for use in the course of a violation of R.C. 2923.32, (b) was derived from or realized through conduct in violation of R.C. 2923.32, and (c) constituted proceeds derived from the violation of R.C. 2923.32.

■ The property in question included checking and savings accounts, a certificate of deposit, a stock portfolio, jewelry, several cars, a pickup truck, a mobile home, the downpayment on appellant's own residence, a church organ donated to the Trinity Assembly of God, and an electric keyboard donated to a state-sponsored musical group. In addition, appellant's state deferred compensation fund, and his sick leave and vacation time were stipulated as forfeitable.

In the special verdict, the jury indicated that all of the above items, with the exception of several items of jewelry and a Society Bank account, had been traced to the pattern of corrupt activity and were subject to forfeiture. The special verdict indicated that the jury did not simply find a blanket forfeiture,

but discriminated between items which were and items which were not traced to the stolen money.

The evidence in the record before us indicates that the state supported the forfeiture of the items at issue by a preponderance of the evidence. Moreover, even applying a standard of proof of beyond a reasonable doubt, as appellant asserts the court should have done, the jury could have reasonably concluded that these items were subject to forfeiture. See *State v. Eley* (1978), 56 Ohio St.2d 169, 10 O.O.3d 340, 383 N.E.2d 132, syllabus. We therefore overrule appellant's sixth and seventh assignments of error.

Appellant's first, second, fourth, fifth, sixth and seventh assignments of error are overruled, appellant's third assignment of error is sustained, and this matter is remanded to the trial court with instructions to determine the fine in an amount not to exceed three times $1,165,963.27, the amount of state funds actually proven by the state to have been diverted by appellant. The judgment of the trial court is affirmed in part and reversed in part and this matter is remanded to the trial court for further proceedings consistent with this opinion.

*Judgment reversed*
*and cause remanded*
*with instructions.*

TYACK and DESHLER, JJ., concur.