OPINION
{¶ 1} Defendant-appellant Craig Gordon appeals his conviction and sentence entered by the Stark County Court of Common Pleas on one count of complicity to aggravated robbery with a firearm specification.
 STATEMENT OF THE CASE AND FACTS {¶ 2} On November 30, 2004, the Stark County Grand Jury indicted appellant on one count of complicity to commit aggravated robbery, in violation of R.C. 2923.03(A)(2). The charge also carried an attendant firearm specification. Appellant entered a plea of not guilty to the charge at his arraignment on December 3, 2004. The matter proceeded to jury trial on January 10, 2005. The following evidence was adduced at trial.
 {¶ 3} On August 17, 2004, at approximately 11:30 a.m., appellant and his brother, Doug Bolds, were at appellant's home in Canton, Ohio, sitting on the porch, drinking wine. Bolds decided he wanted some "Black and Milds," a cigarette which could only be purchased at "The Store" on West Tuscarawas Street. Bolds and appellant drove to "The Store" and purchased the cigarettes. As they were driving, they saw their brother, Emanuel Bolds, driving his blue New Yorker.
 {¶ 4} The three brothers stopped at Harmon's Pub where they plotted to commit a robbery for drugs. Emanuel Bolds knew of a drug dealer in Massillon, named Jimmy Parker. The trio planned to steal 1.5 ounces of cocaine, which would be worth approximately $1,500. Each of the brothers were assigned a task. Appellant was assigned to drive his girlfriend's Pontiac van. Doug Bold was assigned to draw a gun on the drug dealer when the drugs were shown, grab the drugs, and run out of the house. Appellant saw Doug Bolds insert a gun into the waistband of his pants. Emmanuel Bolds was to "watch the back" of Doug Bolds. The three proceeded to drive to Massillon.
 {¶ 5} Appellant dropped his brothers off at Jimmy Parker's apartment, and circled the area in the van. When he returned, he found his brothers still waiting at the front door because Parker was not at home. The brothers learned Parker might be at 18 Central Court, Massillon, and proceeded to that location. Appellant again dropped off his brothers and waited on Dwight Street, one street over from Central Court at Doug Bolds' ex-girlfriends' residence, which they designated as the pickup point.
 {¶ 6} When his brothers did not return, appellant began to circle the area. Appellant saw Emmanuel at the door, flashing ten fingers which indicated they needed another ten minutes. While appellant was waiting, his girlfriend called and told him she needed her van. Appellant collected his brothers and returned the van to his girlfriend. The three entered another car and returned to the Central Court residence.
 {¶ 7} As appellant was driving around the Central Court area, he observed Emmanuel run down Dwight Street carrying a duffel bag, and hide behind a tree. Appellant learned a shoot out occurred at the Central Court residence, and Doug stumbled and fell. Appellant called 911 and then called his mother. Appellant and his mother proceeded to Massillon Community Hospital where they learned Doug had died. Also at the hospital were Stanley Bruce Parker, who was in critical condition, and Allen Rogers, who was suffering from a gunshot wound to his arm.
 {¶ 8} Officer Paul Covert testified he was dispatched to Central Court for a disturbance call of "shots being fired." On his way to the area, he stopped a Pontiac minivan carrying three persons, one with a gunshot wound to his arm. Covert called for backup and proceeded to the address. In the doorway, Covert found an unresponsive black male, who was later identified as Doug Bolds. Covert called paramedics, who transported Doug Bolds to Massillon Community Hospital.
 {¶ 9} Stark County Criminalist Michael Short testified he arrived at the scene at approximately 8:00 p.m., to gather evidence. He found a Lorsin Model L.380 semi automatic pistol containing a live cartridge; a .38 special caliber Smith Wesson containing five spent cartridges; a spent .38 caliber Winchester cartridge; blood; 2.5 grams of crack cocaine; and clothes belonging to Doug Bolds. Short opined both guns were operable. Two lead bullets, which had been fired from a revolver, were subsequently recovered from Doug Bolds' body.
 {¶ 10} Jennifer Blount of the Stark County Crime Lab analyzed DNA samples from Doug Bolds, Allen Rogers, Emmanuel Bolds, and Stanley Parker. Blount could not exclude the DNA found on the Lorsin model semiautomatic pistol as the DNA of Doug Bolds. Blood found on the trigger of the Smith Wesson was that of Allen Rogers.
 {¶ 11} Appellant proceeded to the Massillon Police Station on August 23, 2004, waived his Miranda rights, and gave a taped statement to Detective Nevada Gump, which was played for the jury. After the state rested its case, appellant moved the trial court for an acquittal pursuant to Crim. R. 29, which was denied. Appellant presented no witnesses and did not testify. After closing arguments, the trial court instructed the jury on the applicable law.
 {¶ 12} During the second day of deliberations, Juror No. 152 was standing in the vicinity of the courthouse snack bar when an attorney unrelated to appellant's case asked the trial court's bailiff how long it took the jury to convict appellant. The bailiff reported the incident to the trial court, which called the parties into the courtroom. The trial court interviewed the juror. The juror reported hearing the aforementioned question, but assured the trial court he did not discuss the matter with any other juror and he could put the matter out of his mind. The juror joined the other jurors and continued deliberations. The trial court also interviewed the bailiff and the attorney. Appellant was permitted to question these individuals. Upon conclusion of the interviews, the trial court denied appellant's motion for mistrial. The jury subsequently returned with a guilty verdict.
 {¶ 13} The trial court proceeded to sentencing. The trial court commented on appellant's prior criminal record which included three felony convictions of trafficking in cocaine, as well as the nature of the instance offense which resulted in the shooting death of one individual and injuries to two others with a firearm. The trial court sentenced appellant to the maximum term of ten years on the aggravated robbery count, with a three year mandatory sentence on the firearm specification. The trial court memorialized the conviction and sentence via Judgment Entry filed January 14, 2005.
 {¶ 14} It is from this judgment entry appellant appeals, raising the following assignments of error:
 {¶ 15} "I. THE JURY VERDICT FINDING THE APPELLANT CRAIG GORDON [SIC] WAS AGAINST THE MANIFEST WEIGHT AND SUFFICIENCY OF THE EVIDENCE PRESENTED AT TRIAL.
 {¶ 16} "II. THE TRIAL COURT ERRED WHEN IT [SIC] THE APPELLANT CRAIG GORDON TO THE MAXIMUM PRISON SENTENCE.
 {¶ 17} "III. THE TRIAL COURT ERRED WHEN IT SENTENCED THE APPELLANT CRAIG GORDON TO A HARSHER SENTENCE FOR GOING TO TRIAL.
 {¶ 18} "IV. THE APPELLANT CRAIG GORDON WAS DENIED HIS RIGHT TO A FAIR AND IMPARTIAL TRIAL WHEN THE TRIAL COURT FAILED TO DECLARE A MISTRIAL AFTER MORE THAN ONE JUROR OVERHEARD AN ATTORNEY IN THE COURTHOUSE ASK THE COURT'S BAILIFF HOW LONG IT HAD TAKEN THE JURY TO CONVICT MR. GORDON WHEN THE JURY HAD NOT FINISHED ITS DELIBERATIONS."
 I {¶ 19} In the first assignment, appellant challenges the sufficiency and weight of the evidence.
 {¶ 20} In State v. Jenks (1981), 61 Ohio St.3d 259, the Ohio Supreme Court set forth the standard of review when a claim of insufficiency of the evidence is made. The Ohio Supreme Court held: "An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." Id. at paragraph two of the syllabus.
 {¶ 21} When applying the aforementioned standard of review to the case sub judice, based upon the facts noted supra, we do not find, as a matter of law, appellant's conviction was based upon insufficient evidence.
 {¶ 22} On review for manifest weight, a reviewing court is to examine the entire record, weigh the evidence and all reasonable inferences, consider the credibility of the witnesses and determine Awhether in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the judgment must be reversed. The discretionary power to grant a new hearing should be exercised only in the exceptional case in which the evidence weighs heavily against the judgment." State v. Thompkins, 78 Ohio St.3d 380, 387,1997-Ohio-52, citing State v. Martin (1983), 20 Ohio App.3d 172, 175. Because the trier of fact is in a better position to observe the witnesses= demeanor and weigh their credibility, the weight of the evidence and the credibility of the witnesses are primarily for the trier of fact. State v. DeHass (1967), 10 Ohio St.2d 230, syllabus 1.
 {¶ 23} Appellant argues no victim of a robbery testified at trial. The only evidence was the testimony of police officers as well as the tape-recorded statements of appellant and the co-defendants. Appellant concludes, "[t]here was so much insinuation toward the incident in which Douglas Bolds died as being a robbery that the jury lost its way." Appellant's Brief at 7-8. We disagree.
 {¶ 24} During the interview with Detective Gump, appellant admitted he was an integral part of the plot to rob the drug dealer. On two occasions on the same day, appellant drove the vehicle and deposited his brothers at the designated location. Appellant knew Doug Bolds was carrying a weapon. Additionally, two guns were retrieved from the Central Court residence. One gun had DNA which was consistent with the DNA of Doug Bolds.
 {¶ 25} Based upon the evidence set forth in the Statement of the Case and Facts, supra, and the entire record in this matter, we find appellant's conviction was not against the manifest of the evidence.
 {¶ 26} Appellant's first assignment of error is overruled.
 II {¶ 27} In his second assignment of error, appellant challenges the trial court's imposition of a maximum sentence.
 {¶ 28} Pursuant to R.C. 2929.14(C), a trial court may impose the maximum sentence under the following conditions:
 {¶ 29} "(C) * * * the court imposing a sentence upon an offender for a felony may impose the longest prison term authorized for the offense pursuant to division (A) of this section only upon offenders who committed the worst forms of offense, upon offenders who pose the greatest likelihood of committing future crimes, upon certain major drug offenders under division (D)(3) of this section, and upon certain repeat violent offenders in accordance with division (D)(2) of this section."
 {¶ 30} This statute is to be read in the disjunctive. See, State v.Comersford (June 3, 1999), Delaware App. No. 98CAA01004, unreported. Accordingly, a maximum sentence may be imposed if the trial court finds any of the above listed categories apply.
 {¶ 31} In State v. Redman, Stark App. No. 2002CA00097, 2003-Ohio-646,
this Court held:
"While a recitation of the statutory criteria alone may be enough to justify more than the minimum sentence, it is not enough to justify the imposition of the maximum sentence. The trial court also must provide its reasons. As stated in R.C. 2929.19(B)(2)(d): The court shall impose a sentence and shall make a finding that gives its reasons for selecting the sentence imposed in any of the following circumstances:
 {¶ 32} "(d) If the sentence is for one offense and it imposes a prison term for the offense that is the maximum prison term allowed for that offense by division (A) of section 2929.14 of the Revised Code, its reasons for imposing the maximum prison term."
 {¶ 33} Thus, a trial court has discretion to impose a maximum sentence if it determines one of the factors listed in R.C. 2929.14(C) exists, and it explains its reasons for imposing a maximum sentence as required by R.C. 2929.19(B)(2)(d).
 {¶ 34} At the sentencing hearing, the trial court stated:
 {¶ 35} "[COURT] . . . The Court finds in looking at the more serious factors, of course an individual was killed and there were other people that were shot. There was numerous gunshots fired. This was a well thought out plan, not particularly well executed, but it was a well thought out plan. They made several trips to try to commit this offense and it did not work on the first occasion.
 {¶ 36} "It was an organized piece of criminal activity. . . . He [Gordon] was part of the planning. He was part of what was going to happen and was well aware what was going to happen, in fact, knew there was a gun being taken into the situation.
 {¶ 37} "His prior record would also be considered a more serious factor having served two prior prison terms. The Court finds recidivism would be likely in this case and based on his prior record, and based upon the fact that he served more than one prior prison term, the Court finds that the offense committed is the worst form of the offense in that it can't be much worse when somebody gets killed and people get shot. There is a likelihood of committing future offenses based upon not only this offense, but his prior record that the Court has had the opportunity to review." Tr. Vol. II at 298-299.
 {¶ 38} Based upon the foregoing, we find the trial court provided sufficient reasons for imposing the maximum sentence.
 {¶ 39} Appellant's second assignment of error is overruled.
 III {¶ 40} In the third assignment, appellant argues the trial court sentenced him to a harsher sentence for going to trial. Appellant explains two of the four co-defendants entered pleas of guilty. Emmanuel Bolds plead guilty to complicity to commit aggravated robbery, and received a total of six years imprisonment. Stanley Parker plead guilty to complicity to commit trafficking in cocaine, and received a three year sentence. Allen Rogers proceeded to trial and was found guilty of trafficking and voluntary manslaughter, Rogers received a prison term of thirteen years. Appellant received a total term of imprisonment of thirteen years. Appellant asserts "[t]his fact alone shows the proclivity of the court to punish defendants that go to trial." Appellant's Brief at 11.
 {¶ 41} In State v. Kingrey, Delaware App. 04CAA04029, 2004-Ohio-4605, this Court analyzed a similar argument:
 {¶ 42} "When reviewing a sentence imposed by the trial court, the applicable record to be examined by the appellate court includes the following: (1) the pre-sentence investigation report; (2) the trial court record in the case in which the sentence was imposed; and (3) any oral or written statements made to or by the court at the sentencing hearing at which the sentence was imposed. R.C. 2953.08(F)(1) through (3). The sentence imposed, by the trial court, should be consistent with the overriding purposes of felony sentencing: `to protect the public from future crime by the offender' and `to punish the offender.'
 {¶ 43} "R.C. 2929.11(B) reads as follows: `(B). A sentence imposed for a felony shall be reasonably calculated to achieve the two overriding purposes of felony sentencing set forth in division (A) of this section, commensurate with and not demeaning to the seriousness of the offender's conduct and its impact upon the victim, and consistent with sentences imposed for similar crimes committed by similar offenders.'
 {¶ 44} "The court in State v. Ryan, Hamilton App. No. C-020283, 2003-Ohio-1188, applied principles set forth in an article by Judge Burt Griffin and Professor Lewis Katz clarifying for appellate courts the basic principles for achieving the overriding purpose of felony sentencing as: (1) reasonableness, (2) proportionality, and (3) consistency. Id., citing Griffin and Katz, Sentencing Consistency: Basic Principles Instead of Numerical Grids: The Ohio Plan (2002), 53 Case W.R.L.Rev. 1, 12. See also, State v. Georgakopoulos, 8th Dist. No. 81934, 2003-Ohio-4341 at ¶ 18.
 {¶ 45} "In applying those principles, the court, citing Griffin and Katz, stated that `[t]he Ohio plan attempts to assure proportionality in felony sentencing through consistency. R.C. 2929.11(B). Consistency, however, does not necessarily mean uniformity. Instead, consistency aims at similar sentences. Accordingly, consistency accepts divergence within a range of sentences and takes into consideration a trial court's discretion to weigh relevant statutory factors. The task of an appellate court is to examine the available data, not to determine if the trial court has imposed a sentence that is in lockstep with others, but to determine whether the sentence is so unusual as to be outside the mainstream of local judicial practice. Although offenses may be similar, distinguishing factors may justify dissimilar sentences.' Ryan, supra at ¶ 10, (internal citations omitted). Further, the analysis noted: `An obstacle to appellate review for consistency of individual sentences under the Ohio plan is the current lack of acceptable sentencing data and records from which to determine the mainstream sentencing range for specific offenses. Absent such data, however, appellate courts can still compare similar cases for consistency in sentencing.' Id. State v.Georgakopoulos, supra, at ¶ 19.
 {¶ 46} "Simply pointing out an individual or series of cases with different results will not necessarily establish a record of inconsistency. State v. Gorgakopoulos, supra, at ¶ 23. The Ninth District Court of Appeals has stated: `[i]t is not the trial court's responsibility to research prior sentences from undefined, and largely unavailable, databases before reaching its sentencing decision. The legislature did not intend to place such a burden on the trial court when it enacted 2929.11(B). The legislature's purpose for inserting the consistency language contained in R.C. 2929.11(B) is to make consistency rather than uniformity the aim of the sentencing structure. See Griffin and Katz, Ohio Felony Sentencing Law (2001), 59. Uniformity is produced by a sentencing grid, where all persons convicted of the same offense with the same number of prior convictions receive identical sentences,Id. Consistency, on the other hand, requires a trial court to weigh the same factors for each defendant, which will ultimately result in an outcome that is rational and predictable. Under this meaning of "consistency," two defendants convicted of the same offense with a similar or identical history of recidivism could properly be sentenced to different terms of imprisonment. Consequently, Appellant cannot establish, either at trial or on appeal, that his sentence is contrary to law because of inconsistency by providing the appropriate court with evidence of other cases that show similarly situated offenders have received different sentences than did he. Thus, the only way for Appellant to demonstrate that his sentence was "inconsistent," that is, contrary to law within the meaning of R.C. 2929.11(B), is if he establishes that the trial court failed to properly consider the factors and guidelines contained in R.C. 2929.12, R.C. 2929.13 and R.C. 2929.14. These sections, along with R.C. 2929.11, create consistency in sentencing.' State v. Quine, Summit App. No. 20968, 2002-Ohio-6987 at ¶ 12-13.
 {¶ 47} "In State v. Hill (1994), 70 Ohio St.3d 23, 635 N.E.2d 1248, the defendant was convicted of complicity to trafficking in marijuana, and sentenced to one year in prison and further ordered to forfeit his apartment complex. His co-defendant received probation instead of a prison sentence. Id. at 29, 635 N.E.2d at 1252. On appeal, he argued that the trial court abused its discretion by giving him a harsher sentence than was given his co-defendant. Id. The Ohio Supreme Court observed: `[t]here is no question that on its face the sentence received by appellant, when compared to Newbauer's punishment, is disproportionate. Given the fact that Newbauer received probation, appellant's one-year prison sentence does appear to be harsh. However, as a general rule, an appellate court will not review a trial court's exercise of discretion in sentencing when the sentence is authorized by statute and is within the statutory limits. See, generally, Toledo v. Reasonover (1965), 5 Ohio St.2d 22, 24, 34 O.O.2d 13, 14, 213 N.E.2d 179, 180-181. See, also, State v. Cassidy
(1984), 21 Ohio App.3d 100, 102, 21 OBR 107, 108-109, 487 N.E.2d 322,323; State v. Burge (1992), 82 Ohio App.3d 244, 249, 611 N.E.2d 866,869; and State v. Grigsby (1992), 80 Ohio App.3d 291, 302,609 N.E.2d 183, 190.
 {¶ 48} "`In the case sub judice, the trial court followed the sentencing scheme set forth by the General Assembly and apparently elected the median imprisonment permitted for a fourth-degree felony. See R.C. 2929.11(D)(2). The sentence was within the statutory limits and, for this reason, we will not interfere with the trial court's exercise of discretion.' Id.
 {¶ 49} "In State v. Comer, 99 Ohio St.3d 463, 793 N.E.2d 473,2003-Ohio-4165, the Supreme Court held a trial court is required to make its statutorily enumerated findings and give reasons supporting those findings at the sentencing hearing. The Supreme Court's opinion indicates its holding is not limited to cases like Comer, but rather, applies generally to all sentencing. * * *
 {¶ 50} "Appellant cites no precedent, or any other authority, for reversal of an otherwise valid sentence on the basis that more culpable co-defendants were not punished more severely. There is no requirement that co-defendant's receive equal sentences. State v. Lloyd, 11th Dist. No. 2002-L-069, 2003-Ohio-6417 at ¶ 21; United State v. Frye (6th Cir., 1987), 831 F.2d 664, 667. Each defendant is different and nothing prohibits a trial court from imposing two different sentences upon individuals convicted of similar crimes. State v. Aguirre, 4th Dist. No. 03CA5, 2003-Ohio-4909 at ¶ 50." State v. Kingrey, supra.
 {¶ 51} Our review of the record herein does not demonstrate the trial court failed to consider the purposes and principles of R.C. 2929.11 et seq. in sentencing appellant. The sentence imposed by the trial court is within the statutory range for the offense. The trial court considered the statutory factors. Appellant has not demonstrated his sentence is grossly disproportionate. Thus, we find the record supports appellant's sentence and his sentence is not contrary to law.
 {¶ 52} Appellant's third assignment of error is overruled.
 IV {¶ 53} In his fourth assignment, appellant maintains he was denied his right to a fair and impartial trial because the trial court failed to declare a mistrial after Juror No. 152 heard a derogatory comment made by a nonparticipating attorney.
 {¶ 54} Trial courts have discretion in determining a juror's ability to be impartial. State v. Vrabel, 99 Ohio St.3d 184, 2003-Ohio-3193;State v. Williams (1983) 6 Ohio St.3d 281, 288. "Where a party raises the question of outside influence or information impacting a juror the trial court must hold a hearing to determine whether the communication biased the juror. In such a case, the trial court possesses broad discretion in dealing with the contact and determining whether to declare a mistrial or to replace an affected juror. The court is not required to specifically ask whether a juror remains impartial. `A court may determine that a juror's impartiality remains unaffected based upon that juror's testimony'." State v. Gray (July 27, 2000), Cuyahoga App. No. 76170 (Citations omitted).
 {¶ 55} "The United States Constitution does not require a new trial `every time a juror has been placed in a potentially compromising situation * * * [because] it is virtually impossible to shield jurors from every conduct or influence that might theoretically affect their vote'." State v. Johnson (Jan. 16, 1997), Cuyahoga App. No. 70234, quoting, State v. Phillips, 455 U.S. at 217. A mistrial should not be granted merely because some minor error or irregularity had arisen.Johnson, supra, citing State v. Blankenship (1995), 102 Ohio App.3d 534.
 {¶ 56} In the instant case, there is no evidence in the record Juror No. 152 was tainted or in any way biased by the comment made. The bailiff immediately notified the trial court of the event, and the trial court questioned the juror, the bailiff, and the attorney involved. Juror No. 152 informed the court he did not discuss the matter with any other juror and could put the matter out of his mind. There is no evidence any other juror heard the comment.
 {¶ 57} Accordingly, we do not find the trial court abused its discretion by not declaring a mistrial and not removing the juror.
 {¶ 58} Appellant's fourth assignment of error is overruled.
 {¶ 59} The January 14, 2005 Judgment Entry of the Stark County Court of Common Pleas is affirmed.
Hoffman, J. Gwin, P.J. and Farmer, J. concur
 JUDGMENT ENTRY
For the reasons stated in our accompanying Memorandum-Opinion, the January 14, 2005 Judgment Entry of the Stark County Court of Common Pleas is affirmed. Costs assessed to appellant.