[Cite as *State v. Bell*, 2012-Ohio-4853.]

IN THE COURT OF APPEALS FOR GREENE COUNTY, OHIO

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| Plaintiff-Appellee | : | C.A. CASE NO.   2012 CA 15 |
| v. | : | T.C. NO.   11CR371 |
| JACKIE L. BELL II | : | (Criminal appeal from Common Pleas Court) |
| Defendant-Appellant | : | |
| | : | |

. . . . . . . . . .

**O P I N I O N**

Rendered on the _____19th_____ day of _____October_____, 2012.

. . . . . . . . . .

ELIZABETH A. ELLIS, Atty. Reg. No. 0074332, Assistant Prosecutor, 61 Greene Street, Xenia, Ohio 45385
        Attorney for Plaintiff-Appellee

SCOTT BISSELL, Atty. Reg. No. 0085229, 3080 Ackerman Blvd., Suite 320, Kettering, Ohio 45429
        Attorney for Defendant-Appellant

. . . . . . . . . .

DONOVAN, J.

{¶ 1}    Defendant-appellant Jackie Bell, II, appeals his conviction and sentence for one count of possession of heroin (in an amount exceeding 100 unit doses but less than 500 unit doses), in violation of R.C. 2925.11(A), a felony of the second degree.   Bell filed a timely notice of appeal with this Court on January 31, 2012.

**{¶ 2}** On May 19, 2011, at approximately 7:00 a.m., police officers were dispatched to a residence in Fairborn, Ohio, to investigate the death of an individual named Brandon Murray as a result of a possible drug overdose. During the investigation, the police officers discovered a cell phone under Murray's body. The last call made from the cell phone, as well as several other outgoing calls, were made to a phone number known to the police officers as belonging to the appellant, Bell. Through their investigation, the police officers also received information that on the night before his death, Murray traveled to a Motel 6 in Fairborn to meet Bell who was renting a room there.

**{¶ 3}** Based on the information they had received, Officers Hiles and Hardman of the Fairborn Police Department traveled to the Motel 6. Upon arriving, the police officers discovered that Room 158 at the motel was registered to Bell. The police officers went to the room and made contact with Bell and a female, Katie Hovatic, who was also present in the room. The officers had been ordered to secure the room until a search warrant could be obtained, and they ordered Bell and Hovatic to vacate the premises. Prior to obtaining the search warrant, the officers conducted a protective sweep of the motel room in order to determine whether anyone else was present. Although no one else was found inside the room, Officer Hardman observed two small pieces of plastic baggies in plain view during the protective sweep. Once the sweep was completed, the officers left the room until the search warrant arrived.

**{¶ 4}** Once the police secured the warrant, they conducted a complete search of Bell's motel room wherein they discovered a pill bottle containing 125 capsules of heroin, another pill bottle containing non-encapsulated heroin, a cigar containing marijuana, two pieces of torn plastic baggie, two cell phones, and Bell's driver's license. Based on the evidence seized from the motel room, Bell was arrested and taken to jail.

**{¶ 5}** On July 1, 2011, Bell was charged by indictment with one count of trafficking in

heroin, two counts of possession of heroin, and one count of tampering with evidence. At his arraignment on July 22, 2011, Bell pled not guilty to all of the counts in the indictment. Bell filed a motion to suppress on October 25, 2011, in which he argued that the Fairborn Police unlawfully seized his motel room prior to the issuance of the search warrant thereby requiring suppression of the contraband discovered after the warrant was obtained. A hearing was held on Bell's motion to suppress on December 22, 2011. The trial court overruled Bell's motion to suppress in a written decision issued on January 23, 2012.

{¶ 6}   Bell's case went to trial on January 23, 2012. After opening statements were made by both parties, the State dismissed one count of possession of heroin, as well as the tampering with evidence count. At the close of the State's case, Bell made a Crim. R. 29 motion for acquittal with respect to the count for trafficking in heroin, which the trial court sustained. The jury, however, found Bell guilty of the remaining count of possession of heroin, a felony of the second degree. Shortly thereafter, the trial court sentenced Bell to five years in prison and three years of mandatory post-release control.

{¶ 7}   It is from this judgment that Bell now appeals.

{¶ 8}   Bell's first assignment of error is as follows:

{¶ 9}   "THE TRIAL COURT ERRONEOUSLY OVERRULED THE APPELLANT'S MOTION TO SUPPRESS."

{¶ 10}   In his assignment, Bell contends that the trial court erred when it overruled his motion to suppress. Specifically, Bell argues that the trial court erred by failing to suppress any and all evidence obtained as a result of the unlawful search and seizure of his motel room prior to obtaining a search warrant.

{¶ 11}   In regards to a motion to suppress, "the trial court assumes the role of trier of facts and is in the best position to resolve questions of fact and evaluate the credibility of witnesses." *State*

*v. Hopfer*, 112 Ohio App.3d 521, 548, 679 N.E.2d 321 (2d Dist. 1996), quoting *State v. Venham*, 96 Ohio App.3d 649, 653, 645 N.E.2d 831 (4th Dist.1994). The court of appeals must accept the trial court's findings of fact if they are supported by competent, credible evidence in the record. *State v. Isaac,* 2d Dist. Montgomery No. 20662, 2005-Ohio-3733, citing *State v. Retherford*, 93 Ohio App.3d 586, 639 N.E.2d 498 (2d Dist. 1994). Accepting those facts as true, the appellate court must then determine, as a matter of law and without deference to the trial court's legal conclusion, whether the applicable legal standard is satisfied. *Id*.

**{¶ 12}** The Fourth Amendment protects individuals from an unreasonable search in their homes. See *Katz v. United States*, 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967); *State v. White*, 175 Ohio App.3d 302, 2008-Ohio-657, 886 N.E.2d 904 (9th Dist.). The sanctity of the home extends to any area where one has a legitimate and reasonable expectation of privacy, including a motel room. *State v. Norris*, 2d Dist. Montgomery No. 17689, 1999 WL 1000034 at * 2-3 (Nov. 5, 1999). Police may not enter one's home to perform a search or to seize without a warrant, absent consent or exigent circumstances. *Payton v. New York*, 445 U.S. 573, 100 S.Ct. 1371, 63 L.Ed.2d 639 (1980). The United States Supreme Court has held that an exigent circumstance is (1) an emergency situation which arises when a person in the home is in need of "immediate aid" or there is a life-threatening situation, or (2) a "hot pursuit." *Mincey v. Arizona*, 437 U.S. 385, 392-393, 98 S.Ct. 2408, 57 L.Ed.2d 290 (1978);*State v. Bowe*, 52 Ohio App.3d 112, 113, 557 N.E.2d 139 (9th Dist.1988). "The need to protect or preserve life or avoid serious injury is justification for what would be otherwise illegal." Id. at 392. An important factor in determining whether exigent circumstances exist  is the gravity of the underlying offense. *Welsh v. Wisconsin*, 466 U.S. 740, 753, 104 S.Ct. 2091, 80 L.Ed.2d 732 (1984).

**{¶ 13}** A warrantless entry into one's home is justified if the person whose property is being searched voluntarily gives consent to the entry. *State v. Asworth*, 10th Dist. Franklin No. 90AP-916, 1991 WL 54181, *4 (April 11, 1991), citing *Illinois v. Rodriguez*, 497 U.S. 177, 110 S.Ct.

2793, 111 L.Ed.2d 148 (1990). In examining the record, we find no indication of Bell's consent to permit the police officers to enter his motel room. More importantly, both Detective Ryan Whittaker and Detective Ben Roman specifically testified at the suppression hearing that no exigent circumstances existed prior to the police officers' decision to remove the occupants of the motel room and perform a warrantless protective sweep of the room. Accordingly, we agree with the trial court which concluded that there were clearly no exigent or emergency circumstances which justified the officers' warrantless protective sweep of Bell's motel room. Thus, we reject the State's argument that the officers' initial warrantless entry into Bell's motel room was justified by any exception to the warrant requirement. Further, we note that the record is devoid of any evidence that the officers who performed the protective sweep had any probable cause to believe that anyone else was present in the room after they removed Bell and his female friend.

{¶ 14} Bell also argues that the search warrant was tainted because the officers' observations regarding the pieces of plastic baggie made during the initial warrantless entry into Bell's motel room could not constitute proper grounds for a valid search warrant. The U.S. Supreme Court, however, has held that, after excising tainted information from a supporting affidavit, "if sufficient untainted evidence was presented in the warrant affidavit to establish probable cause, the warrant was nevertheless valid." *United States v. Karo*, 468 U.S. 705, 104 S.Ct. 3296, 82 L.Ed.2d 530 (1984). It is well-settled that "the ultimate inquiry *** is not whether the underlying affidavit contained allegations based upon illegally obtained evidence, but whether, putting aside all tainted allegations, the independent and lawful information stated in the affidavit suffices to show probable cause." *State v. Gross*, 97 Ohio St.3d 121, 2002-Ohio-5524, 776 N.E.2d 1061, quoting *United State v. Levasseur*, 620 F.Supp. 624, 631 (E.D.N.Y.1985). In the instant case, the officers' observations during the initial illegal entry into Bell's motel room are not critical to establishing probable cause. Therefore, we find that the trial court properly excised the officers' observations regarding the pieces of plastic baggie (paragraph seven) from the supporting affidavit for the warrant.

{¶ 15} Now, we must determine whether the remainder of the supporting affidavit independently suffices to establish probable cause for the search warrant. The record reflects that Det. Ryan Whittaker appeared before a Fairborn Municipal Court judge on May 19, 2011, and requested a warrant to search 800 N. Broad Street, Room 158, for heroin and various other drug related paraphernalia. After setting forth his qualifications in the beginning of the affidavit, Det. Whittaker averred as follows:

{¶ 16} "2. On May 19, 2011 at approximately 0330 hours Sgt. Ricketts, Officer May, and Officer Bair were dispatched to 329 E. Emerson Ave. apartment C reference [sic] an unconscious non breathing subject. Fairborn Fire Department was also dispatched to the scene. Upon arrival Officer May met with Fairborn medic J. Lawrence who stated he had documented the death of a Brandon Murray at 0335 hours. The residence of 329 E. Emerson Ave. apt. C was secured and a death investigation was initiated. The tenant of 329 E. Emerson Ave. apt. C was determined to be Emily Minehart who was also present. During the investigation Sgt. Ricketts contacted Greene County Coroner Investigator Huston to respond to the scene. During the investigation Greene County Coroner Investigator Huston located a needle mark on Murray's left forearm.

{¶ 17} "3. During the investigation Officer Bair spoke with Nicole Bayard at 335 E. Emerson Ave. apartment C. Bayard informed Officer Bair that Murray arrived at her residence at approximately 2000 hours on May 18, 2011. She further stated that Murray left several times between 2000 hours on May 18, 2011 and 0100 hours on May 19, 2011. Bayard further stated during one of those times he went to Sabrina Chafin's apartment located 211 E. Emerson Ave., Fairborn and borrowed her cell phone. Officer Bair continued to speak with Bayard and she stated that Murray admitted to using heroin, vicodin, and xanax. Bayard advised her brother Dillon Bayard arrived and Murray and Dillon left together. Officer Bair spoke with Dillon and he stated he arrived at his sister's apartment and left with Murray. Dillon stated that Murray asked him to take him to the Motel 6 because 'Jay' owed him money. Dillon stated after going to the Motel 6 he took Murray

back to E. Emerson Ave. and Murray walked towards Minehart's apartment 329 E. Emerson Ave. Apartment C. During the investigation a cell phone was located under Brandon Murray's body. The phone was a LG Trac fone [sic] black in color. The phone's last outgoing call was to phone number (614) 783-8659. The Trac fone was later found to belong to Sabrina Chafin. Officer Bair later made contact with Sabrina Chafin who identified her phone and stated that Brandon Murray arrived at her residence at 2100 hour on May 18, 2011 to borrow the phone. At 0955 hours on May 19, 2011, Sabrina Chafin gave consent for Officers to search her cell phone. When searching the cell phone Det. Roman and affiant located a call from Chafin's phone to (614) 783-8569, time stamped 0118 hours on May 19, 2011. Det. Roman and the Affiant further located three additional calls to cell phone (614) 783-8569.

{¶ 18} "4. On May 19, 2011 I spoke with Det. Roman of the Fairborn Police Department. Det. Roman stated that he had previously identified 'Jay' as Jackie Bell II. Det. Roman further stated that he had received information from a credible and reliable source that Jackie Bell II is involved in drug trafficking. The source stated that he/she has purchased heroin from Bell in the past for $10.00 a capsules [sic]. The source further stated that he/she has been purchasing heroin from Bell for approximately four months. The source also provided Det. Roman with a phone number for Jackie Bell and that phone was (614) 783-8569. The same phone number last dialed from the phone located under the body of Brandon Murray. Det. Roman further advised his source has provided credible information in the past on drug traffickers and has completed controlled drug purchases in the past under the guidance of Det. Roman.

{¶ 19} "5. On May 19, 2011, Det. Jahns spoke with the front desk clerk identified as Brenda Royse at the Motel 6. The clerk stated that the room is rented by a male identified as Jackie Bell II. Royse stated that a maintenance employee identified as Michael Wick had been in Jackie Bell's room on May 18, 2011. Royse advised Wick came to her and stated he observed a large amount of currency in the room. Brenda Royse further stated that Jackie Bell II is paying day by day

and paying with U.S. currency.

{¶ 20} "6. On May 19, 2011 Det. Roman contacted Michael Wick and spoke with him over the phone. During the phone conversation Wick informed Det. Roman that he was in Jackie Bell's room on May 18, 2011 at approximately 1545 for maintenance work and observed a black male and white female inside the room. Wick further informed Det. Roman that he observed a large stack of money several inches thick. Wick stated he would estimate the stack of money to be approximately three inches thick. Wick stated that he believed this was suspicious and informed the desk clerk Brenda Royse."

{¶ 21} Upon review, we find no error in the trial court's suppression ruling. "In determining the sufficiency of probable cause in an affidavit submitted in support of a search warrant, '[t]he task of the issuing magistrate is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the "veracity" and "basis of knowledge" of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place.' " *State v. George*, 45 Ohio St.3d 325, 544 N.E.2d 640 (1989), paragraph one of the syllabus, following and quoting *Illinois v. Gates*, 462 U.S. 213, 238-239, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983).

{¶ 22} "In reviewing the sufficiency of probable cause in an affidavit submitted in support of a search warrant issued by a magistrate, neither a trial court nor an appellate court should substitute its judgment for that of the magistrate by conducting a *de novo* determination as to whether the affidavit contains sufficient probable cause upon which that court would issue the search warrant. Rather, the duty of a reviewing court is simply to ensure that the magistrate had a substantial basis for concluding that probable cause existed. In conducting any after-the-fact scrutiny of an affidavit submitted in support of a search warrant, trial and appellate courts should accord great deference to the magistrate's determination of probable cause, and doubtful or marginal cases in this area should

be resolved in favor of upholding the warrant." Id. at paragraph two of the syllabus (citation omitted).

{¶ 23} In the instant case, the municipal court judge possessed a substantial basis for concluding that probable cause existed. Det. Whittaker's affidavit established Bell was known to police as a drug trafficker. Det. Roman's "reliable" source informed him that "he/she" had purchased encapsulated heroin from Bell in the recent past. The source also stated that "he/she" had been buying heroin from Bell for the past four months. Bell's phone number was the last number called from a cell phone in the possession of Brandon Murray, who had just died from a potential drug overdose. Additionally, the affidavit stated that Murray had contact with Bell at the Motel 6 on the night before his death. Lastly, the affidavit states that a maintenance worker observed a large stack of money in Bell's motel room which he believed to be suspicious. Based on the independent information contained in the affidavit, it was clearly reasonable for the municipal court judge to conclude that heroin would be found in Bell's motel room. Thus, the search warrant was supported by probable cause.

{¶ 24} Bell's first assignment of error is overruled.

{¶ 25} Bell's second and final assignment of error is as follows:

{¶ 26} "THE TRIAL COURT ABUSED ITS DISCRETION IN SENTENCING APPELLANT TO A SENTENCE OF FIVE YEARS IN PRISON AND FORFEITING THE APPELLANT'S MONEY."

{¶ 27} In his final assignment, Bell argues that the trial court erred when it sentenced him to five years in prison. Additionally, Bell argues that the trial court erred when it ordered him to forfeit the $122.00 in the motel room at the time of his arrest. In support of his argument, Bell points out that the forfeiture specification was attached to Count I of the indictment which was dismissed at the close of the State's case upon a Crim. R. 29 motion for acquittal made by Bell's counsel. Since the count to which the forfeiture specification was attached was dismissed, Bell asserts that he cannot

be ordered to forfeit the money.

{¶ 28} A trial court has broad discretion in sentencing a defendant and a reviewing court will not interfere with the sentence unless the trial court abused its discretion. *State v. Reese*, 2d Dist. Montgomery No. 21825, 2007-Ohio-6696; *State v. Durham*, 2d Dist. Montgomery No 21589, 2007-Ohio-6262; *State v. Rose*, 2d Dist. Montgomery No. 21673, 2007-Ohio-4212; *State v. Slone*, 2d Dist. Greene No. 2005 CA 79, 2007-Ohio-130. A court will not typically be found to have abused its discretion in sentencing if the sentence it imposes is within the statutory limits. *State v. Muhammad*, 8th Dist. Cuyahoga No. 88834, 2007-Ohio-4303; *State v. Burge*, 82 Ohio App.3d 244, 249, 611 N.E.2d 866 (10th Dist.1992).

{¶ 29} After *Foster*, trial courts are not required to make any findings or give reasons before imposing any sentence within the authorized statutory range, including maximum, consecutive, or more than minimum sentences. *State v. Foster*, 109 Ohio St.3d 1, 2006-Ohio-856, 845 N.E.2d 470, syllabus at ¶ 7. Courts, nevertheless, are still required to comply with the sentencing laws unaffected by *Foster*, such as R.C. 2929.11 and 2929.12 which require consideration of the purposes and principles of felony sentencing and the seriousness and recidivism factors. *State v. Mathis*, 109 Ohio St.3d 54, 2006-Ohio-855, 846 N.E.2d 1. However, a sentencing court does not have to make any specific findings to demonstrate its consideration of those general guidance statutes. *Foster* at ¶ 42; *State v. Lewis*, 2d Dist. Greene No. 06 CA 119, 2007-Ohio-6607. And, where the record is silent, a presumption exists that the trial court has considered the factors. *State v. Adams*, 37 Ohio St.3d 295, 297, 525 N.E.2d 1361 (1988). Further, where a criminal sentence is within statutory limits, an appellate court should accord the trial court the presumption that it considered the statutory mitigating factors. *State v. Taylor*, 76 Ohio App.3d 835, 839, 603 N.E.2d 401 (2d Dist.1992); *State v. Crouse*, 39 Ohio App.3d 18, 20, 528 N.E.2d 1283 (2d Dist.1987). Consequently, the appellant has an affirmative duty to show otherwise.

{¶ 30} Initially, we note that Bell concedes that the sentences imposed by the trial court are within the applicable statutory ranges for the offenses. We also note that the trial court affirmatively stated in its second amended judgment entry that it considered both R.C. 2929.11 and 2929.12 before imposing sentence. The record establishes that the trial court was aware that Bell did not have a felony record, and his misdemeanor record was minimal. The trial court, however, did note that Bell was found in possession of a large quantity of heroin. The trial court also noted that Brandon Murray, who was an acquaintance (and apparent customer) of Bell's, died from a drug overdose. It is clear from the record that the trial court did not abuse its discretion when it sentenced Bell to five years in prison.

{¶ 31} Lastly, Bell argues that the trial court erred when it ordered the forfeiture of the money found in the motel room because Count I, to which the forfeiture specification was attached, was dismissed, and Bell was acquitted. Upon review, we find Bell's argument in this regard to be without merit. Pursuant to R.C. 2981.04(B), "[i]f a person *** is convicted of *an* offense *** and the complaint, indictment, or information charging the offense or act contains a specification covering property subject to forfeiture under section 2981.02 of the Revised Code, the trier of fact shall determine whether the person's property shall be forfeited. ***"

{¶ 32} R.C. 2981.02 provides that "[p]roceeds derived from or acquired through the commission of an offense" are subject to civil forfeiture under R.C. 2981.05. "Proceeds" include "any property derived directly or indirectly from an offense," including money. R.C. 2981.01(B)(11)(a). An "offense" is "any act or omission that could be charged as a criminal offense * * * whether or not a formal criminal prosecution * * * began at the time the forfeiture is initiated." R.C. 2981.01(B)(10). Here, Bell was convicted of "*an*" offense; specifically, he was convicted of possession of heroin, in violation of R.C. 2925.11(A). In the indictment, the specification identifies the $122.00 that Bell had in his possession at the time of his arrest as subject to forfeiture "as

provided by law under Chapter 2981 of the Ohio Revised Code."

**{¶ 33}** The judgment of conviction specifically states as follows:

> The Court finds that the defendant has been convicted: by a jury after a jury trial; on January 24, 2012, of the following offenses: Forfeiture Specification: The Grand Jurors further find and specify that certain property is subject to criminal forfeiture to the State of Ohio, by and through the Greene County Prosecutor, for distribution to the Fairborn Police Department, as provided by law under Chapter 2981 of the Ohio Revised Code, to wit: cash monies in the amount of $122.00, which the defendant had in his possession and said monies are proceeds of criminal offenses.

**{¶ 34}** The judgment of conviction also states that Bell was found guilty by a jury of possession of heroin. We note that the conviction for possession of heroin was accompanied by a verdict form signed by all twelve jurors. Following the jury's guilty verdict and despite that the judgment entry of conviction contains the forfeiture specification, the record establishes that the trial court did not submit the specification to the jury for further findings, as required by R.C. 2981.04(B). Because the trial court did not follow the correct procedure mandated by R.C. 2981.04(B), its decision to order the forfeiture of Bell's money was made in error and is hereby reversed and vacated.

**{¶ 35}** Bell's second and final assignment of error is overruled in part and sustained in part.

**{¶ 36}** The trial court's improper forfeiture of Bell's money is reversed and vacated. In all other respects, the judgment of the trial court is affirmed.

. . . . . . . . . .

GRADY, P.J. and HALL, J., concur.

Copies mailed to:

Elizabeth A. Ellis
Scott Bissell
Hon. Stephen A. Wolaver