[Cite as *State v. Cox*, 2012-Ohio-2100.]

IN THE COURT OF APPEALS FOR GREENE COUNTY, OHIO

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| Plaintiff-Appellee | : | C.A. CASE NO. 2011 CA 19 |
| v. | : | T.C. NO. 10CR365 |
| MICAH COX | : | (Criminal appeal from Common Pleas Court) |
| Defendant-Appellant | : | |
| | : | |

. . . . . . . . . .

**O P I N I O N**

Rendered on the ____11th____ day of _____May_____, 2012.

. . . . . . . . . .

NATHANIEL R. LUKEN, Atty. Reg. No. 0087864, Assistant Prosecutor, 61 Greene Street, Xenia, Ohio 45385
        Attorney for Plaintiff-Appellee

MICHAEL B. MILLER, Atty. Reg. No. 0079305, 2160 Kettering Tower, Dayton, Ohio 45423
        Attorney for Defendant-Appellant

. . . . . . . . . .

DONOVAN, J.

{¶ 1}    Defendant-appellant Micah Cox appeals his conviction and sentence for one

count of conspiracy to commit trafficking in crack cocaine (at least ten grams but less than twenty-five) in the vicinity of a juvenile, a violation of R.C. 2923.01(A)(2) and 2925.03(A)(1), a felony of the second degree; one count of trafficking in cocaine (at least ten grams but less than twenty-five grams) in the vicinity of a juvenile, in violation of R.C. 2925.03(A)(1), a felony of the first degree; one count of possession of crack cocaine (at least ten grams but less than twenty-five grams), in violation of R.C. 2925.11(A), a felony of the second degree; one count of trafficking in cocaine (at least ten grams but less than one hundred grams), in violation of R.C. 2925.03(A)(1), a felony of the third degree; one count of trafficking in crack cocaine (at least five grams but less than ten grams), a violation of R.C. 2925.03(A)(1), a felony of the third degree; and one count of possession of crack cocaine (at least five grams but less than ten grams), in violation of R.C. 2925.11(A), a felony of the third degree.

{¶ 2}    Cox filed a timely notice of appeal with this Court on March 21, 2011.

{¶ 3}    The offenses which form the basis for the instant appeal occurred during the course of an undercover illegal narcotics investigation conducted by Yellow Springs Police Detective Rich Miller as part of an ongoing assignment to the A.C.E. Task Force (Greene County Agencies for Combined Enforcement).

{¶ 4}    **A. September 21, 2009**

{¶ 5}    On September 21, 2009, Det. Miller was informed by confidential informant, Crystal Rodriguez, who testified at trial, that she knew two individuals named Micah Cox and Jennifer Younker who were in possession of a quantity of crack cocaine that they wished to sell. Rodriguez  testified that she had been friends with Younker for

approximately eleven years, and Younker had informed her that her boyfriend, Cox, had crack for sale. Det. Miller advised Rodriguez to arrange a meeting with Cox and Younker so that Rodriguez could make a controlled purchase of a specific quantity of crack cocaine.

{¶ 6}    Pursuant to instructions from Det. Miller, Rodriguez arranged with Younker to purchase a half-ounce of crack cocaine for $700.00 from Cox at the parking lot of the McDonalds Restaurant on Main Street in Xenia, Ohio. Det. Miller informed Rodriguez that she would be accompanied by another undercover officer, Det. Naomi Penrod of the A.C.E. Task Force, during the controlled purchase. Det. Miller fabricated a story for Rodriguez to use when making the controlled purchase, to wit: Rodriguez was purchasing the drugs for her friend, played by Det. Penrod, who was then going to give the drugs to her boyfriend, played by Det. Miller.

{¶ 7}    Prior to the purchase, Det. Miller met with Rodriguez and provided her with the money to purchase the drugs. Det. Miller also placed a digital recorder and a small transmitting device in Rodriguez's purse in order to monitor and record the purchase. Rodriguez was also provided with a digital scale to weigh the amount of drugs to further authenticate the controlled purchase. Det. Miller testified that he traveled to the location of the drug transaction so that he could videotape the drug sale from a hidden vantage point in another part of the McDonalds parking lot.

{¶ 8}    Upon arriving at the specified location with Det. Penrod, Rodriguez waited until Younker arrived. Rodriguez exited her vehicle and got into Younker's vehicle in the McDonalds parking lot. Rodriguez testified that she got into the back seat of Younker's car. Younker was in the driver's seat, Cox in the front passenger seat, Cox's brother, Chris

Barnett, in the back seat, and Younker's two year old son was sitting in the back seat of the vehicle.[1] Rodriguez testified that Barnett handed her a baggie of crack cocaine, which she then weighed on the digital scale. Rodriguez gave the money to Younker, and she got out of the vehicle and went back to her own car where Det. Penrod was waiting. Rodriguez and Det. Penrod left the parking lot and met Det. Miller at another location where he took possession of the crack cocaine and transported it to the Yellow Springs Police Department to be booked into evidence.

{¶ 9}    Younker testified that the crack cocaine sold to Rodriguez on September 21, 2009, was provided by Cox who handed the baggie of drugs to Barnett before they reached the McDonalds parking lot, and she was only helping him to find buyers for his drugs. Younker further testified that while she and Barnett were paid for their role in the transaction, Cox kept a portion of the proceeds from the sale of the half-ounce of crack cocaine. At trial, the State presented both the audio and video recordings of the September 21, 2009, controlled purchase to the jury.

{¶ 10}  **B. October 1, 2009**

{¶ 11}  On October 1, 2009, Det. Miller, posing as the boyfriend of Rodriguez's friend from the sale on September 21, 2009, began receiving calls from Younker regarding another opportunity to purchase crack cocaine from Cox. Det. Miller and Younker had three telephone conversations, all of which were recorded by Det. Miller. During the course

---

[1]Younker testified that her son is the son of Micah Cox's twin brother, Michael Cox, who was incarcerated during the events in the instant case. Apparently, Younker was involved in a relationship with Michael Cox prior to his incarceration, after which she began dating Micah Cox.

of the conversations, Younker stated that she could provide another half-ounce of crack cocaine to Det. Miller for the same price as the prior transaction, $700.00. Younker further stated that the crack was being supplied by Cox, who she referred to by his nickname "Twin." At some point, Det. Miller stopped communicating with Younker and began receiving calls from Cox, who identified himself as "Twin." After negotiating for a short time, Cox agreed to sell Det. Miller approximately ten grams of powder cocaine for $700.00.

{¶ 12} After agreeing on the details of the transaction, Det. Miller received another incoming phone call from Cox's number. Apparently, Cox had accidentally dialed his number because Det. Miller testified that all he could hear during the call was two male voices, one he identified as Cox's, speaking in the background about the impending drug transaction. Det. Miller testified that he became suspicious because Cox had told him that he would be coming to the deal accompanied by his girlfriend, Younker, not another male. Det. Miller testified that he thought Cox might be planning to rob him of the money he was going to use to purchase the powder cocaine. Det. Miller was able to record all of the conversations he had with Cox on October 1, 2009, with the exception of the accidental incoming call.

{¶ 13} Based on his suspicions, Det. Miller called off the deal with Cox. Cox, however, was adamant about completing the transaction, but Det. Miller told him that he would purchase Cox's cocaine on another date. During the conversation, Cox attempted to allay Det. Miller's concerns over his personal safety, stating "I'm the same dude you got it from the last time." Det. Miller testified that he understood this statement to mean that Cox

was the individual who sold the crack cocaine to Rodriguez on September 21, 2009. Cox also stated "If I was going to rob you, I would have got you the last time." Det. Miller understood that statement to mean that if Cox wanted to rob him, he would have done so on September 21, 2009, when the money was provided by Det. Penrod posing as his girlfriend to Rodriguez. Cox also agreed to reduce the price of the cocaine from $700.00 to $650.00. Nevertheless, Det. Miller refused to purchase the cocaine on October 1, 2009, and canceled the deal.

**{¶ 14}   C. October 6, 2009**

**{¶ 15}**   On October 6, 2009, Det. Miller spoke with Younker on the telephone again. Younker sought to initiate another controlled purchase of crack cocaine. After some negotiations, Det. Miller agreed to purchase a half-ounce of crack cocaine for $630.00 from Cox. The transaction was to occur at the parking lot at the McDonalds on Main Street in Xenia, Ohio, where the initial purchase was made on September 21, 2009. Shortly before the transaction was to occur, Det. Miller received a call from Cox confirming that he was on his way to the agreed location with the cocaine. Det. Miller informed Cox that he was going to be in a silver Chevrolet Impala for identification purposes. Det. Miller testified that he arranged for other A.C.E. Task Force detectives to have his vehicle under surveillance, while he would be wearing a transmitting device to record the transaction.

**{¶ 16}**   Ultimately, Cox arrived at the parking lot and got into Det. Miller's car. Det. Miller testified that Cox produced a baggie of crack cocaine but stated that it was less than  the amount that had been agreed to earlier. Det. Miller weighed the cocaine and testified that it was approximately seven grams, substantially less than what he originally

agreed to purchase. The deal was consummated, however, with Det. Miller paying Cox $360.00 for the lesser amount of crack cocaine. Cox left after the transaction was completed, and Det. Miller brought the crack cocaine to the Yellow Springs Police Department to be booked into evidence.

{¶ 17} On July 2, 2010, Cox was charged by indictment with the following offenses: Count I, conspiracy to commit trafficking in crack cocaine (at least ten grams but less than twenty-five); Count II, trafficking in cocaine (at least ten grams but less than twenty-five grams); Count III, possession of crack cocaine (at least ten grams but less than twenty-five grams); Count IV, trafficking in cocaine (at least ten grams but less than one hundred grams); Count V, trafficking in crack cocaine (at least five grams but less than ten grams); and Count VI, possession of crack cocaine (at least five grams but less than ten grams). At his arraignment on July 23, 2010, he entered a plea of not guilty to all of the counts in the indictment.

{¶ 18} Cox filed a motion to suppress on September 23, 2010. After the hearing held on said motion, the trial court overruled Cox's motion to suppress in a written decision on November 15, 2010. On December 17, 2010, Cox filed a pro se motion for the removal of his counsel. The trial court , however, did not rule on the motion prior to the scheduled trial date of December 20, 2010. However, Cox did not appear for trial as scheduled.

{¶ 19} Cox was later arrested on a warrant and a three-day trial ended on March 2, 2011. Cox was found guilty of all of the charges against him. At the sentencing hearing on March 7, 2011, the trial court merged Counts I, II, and III. Counts V and VI were likewise merged. The State elected Counts II and V for sentencing purposes. The trial court

noted that Cox was on post-release control for a separate first degree felony drug conviction from Fayette County, Ohio, when the instant offenses were committed. The trial court subsequently sentenced Cox on Counts II, IV, and V to an aggregate term of sixteen years in prison.

{¶ 20} It is from this judgment that Cox now appeals.

{¶ 21} Cox's first assignment of error is as follows:

{¶ 22} "THE TRIAL COURT ERRED IN NOT GRANTING THE DEFENDANT A HEARING ON THE BASIS OF HIS PRO SE MOTION FLED ON DECEMBER 17, 2010, TO REMOVE HIS COUNSEL OF RECORD."

{¶ 23} In his first assignment, Cox contends that the trial court erred when it failed to hold a hearing regarding his December 17, 2010, motion to remove his counsel.

{¶ 24} "An indigent defendant has no right to have a particular attorney of his own choosing represent him. He is entitled to competent representation by the attorney the court appoints for him. Therefore, in order to demonstrate the good cause necessary to warrant removing court appointed counsel and substituting new counsel, defendant must show a breakdown in the attorney-client relationship of such magnitude as to jeopardize defendant's Sixth Amendment right to effective assistance of counsel." *State v. Coleman*, 37 Ohio St.3d 286, 292, 525 N.E.2d 792 (1988); *State v. Murphy*, 91 Ohio St.3d 516, 523, 2001-Ohio-112, 747 N.E.2d 765.

{¶ 25} Disagreement between the attorney and client over trial tactics and strategy does not warrant a substitution of counsel. *State v. Furlow*, 2d Dist. Clark No. 03CA0058, 2004-Ohio-5279; See *State v. Glasure*, 132 Ohio App.3d 227, 724 N.E.2d 1165 (7th

Dist.1999). Moreover, mere hostility, tension and personal conflicts between attorney and client do not constitute a total breakdown in communication if those problems do not interfere with the preparation and presentation of a defense. *Furlow*, supra.

{¶ 26} The decision whether or not to remove court appointed counsel and allow substitution of new counsel is addressed to the sound discretion of the trial court, and its decision will not be reversed on appeal absent an abuse of discretion. *Murphy,* supra. The term "abuse of discretion" implies that the court's attitude is unreasonable, arbitrary, or unconscionable. *State v. Adams*, 62 Ohio St.2d 151, 404 N.E.2d 144 (1980).

{¶ 27} Initially we note that the trial court's failure to rule on Cox's motion to remove counsel constituted an implicit ruling that the motion was denied. When a trial court does not specifically rule on a motion, the court is presumed to have overruled it. *Hosta v. Chrysler*, 2d Dist. Greene No. 2008 CA 35, 2008 CA 36, 2008-Ohio-4392.

{¶ 28} In his motion to remove, Cox argued that his counsel had failed to allow him to hear and watch the audio and video recordings made by the A.C.E. Task Force of the drug transactions even though Cox had asked his counsel if he could. We note Cox's attorney had filed and conducted a motion to suppress this exact same evidence two months earlier. We do not have a transcript of this hearing to discern what, if anything, Cox saw and heard at that time. Nevertheless, Cox did not raise any issues of ineffective assistance prior to the second trial setting. Cox further stated that he and his counsel disagreed regarding how the case should be handled. Cox, however, failed to state in his motion any specific issues over which he and his counsel disagreed.

{¶ 29} We also note that Cox filed his motion to remove his counsel only three days

before the first trial date which had been set by the trial court approximately three months prior. Cox, however, failed to appear on the first day of trial, and another date had to be set on which to begin the trial. Clearly, the timing of the motion to remove and his non-appearance on the first trial date suggests that his request was made for the purposes of delay and not because counsel was in any way deficient in his performance.

{¶ 30} Lastly, we note that Cox failed to express any dissatisfaction with the performance of his appointed counsel when he appeared for the second trial date on February 28, 2011. Had Cox still been dissatisfied with his counsel's representation when the trial finally began, it follows that he could have easily voiced his concerns to the trial court. Moreover, even if Cox and his counsel failed to agree regarding trial tactics, that reason, standing alone, would be insufficient to warrant a substitution of counsel.

{¶ 31} Upon review, we find that the record before us suggests that Cox filed his pro se motion to remove his counsel for the purposes of delay, that is, before the second trial date he did not express any ongoing dissatisfaction with his attorney. On this record, the trial court did not abuse its discretion when it failed to question Cox regarding the allegations made in his motion, thereby implicitly overruling his motion to remove counsel.

{¶ 32} Cox's first assignment or error is overruled.

{¶ 33} Because they are interrelated, Cox's second and third assignments will be discussed together as follows:

{¶ 34} "THERE WAS INSUFFICIENT EVIDENCE TO SUPPORT THE FINDING BY THE JURY OF GUILT AS TO COUNT I, CONSPIRACY TO TRAFFICKING IN COCAINE IN AN AMOUNT EQUAL TO OR EXCEEDING 10

GRAMS BUT LESS THAN 25 GRAMS, IN THE VICINITY OF A JUVENILE."

{¶ 35} "THE FINDING BY THE JURY OF GUILT AS TO COUNT I, CONSPIRACY TO TRAFFICKING IN COCAINE WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE."

{¶ 36} In his second assignment, Cox argues that the evidence adduced at trial was insufficient to sustain a conviction for conspiracy to commit trafficking in crack cocaine (at least ten grams but less than twenty-five) in the vicinity of a juvenile, in violation of R.C. 2923.01(A)(2) and 2925.03(A)(1). Additionally, Cox asserts that his conviction for said offense was against the manifest weight of the evidence.

{¶ 37} "A challenge to the sufficiency of the evidence differs from a challenge to the manifest weight of the evidence." *State v. McKnight*, 107 Ohio St.3d 101,112, 2005-Ohio-6046, 837 N.E.2d 315. "In reviewing a claim of insufficient evidence, '[t]he relevant inquiry is whether, after reviewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.' (Internal citations omitted). A claim that a jury verdict is against the manifest weight of the evidence involves a different test. 'The court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction.'" Id.

{¶ 38} The credibility of the witnesses and the weight to be given to their testimony are matters for the trier of facts to resolve. *State v. DeHass*, 10 Ohio St.2d 230, 231, 227 N.E.2d 212 (1967). "Because the factfinder * * * has the opportunity to see and hear the witnesses, the cautious exercise of the discretionary power of a court of appeals to find that a judgment is against the manifest weight of the evidence requires that substantial deference be extended to the factfinder's determinations of credibility. The decision whether, and to what extent, to credit the testimony of particular witnesses is within the peculiar competence of the factfinder, who has seen and heard the witness." *State v. Lawson*, 2d Dist. Montgomery No. 16288, 1997 WL 476684 (Aug. 22, 1997).

{¶ 39} This court will not substitute its judgment for that of the trier of facts on the issue of witness credibility unless it is patently apparent that the trier of fact lost its way in arriving at its verdict. *State v. Bradley*, 2d Dist. Champaign No. 97-CA-03, 1997 WL 691510 (Oct. 24, 1997).

{¶ 40} "Conspiracy" is defined in R.C. 2923.01(A)(2) in pertinent part:

(A) No person, with purpose to

commit or to

promote or

facilitate the

commission of

*** a felony drug

trafficking ***

offense *** shall

\*\*\* with another person or persons, plan or aid in planning the commission of any of the specified offenses.

(B) No person shall be convicted of conspiracy unless a substantial overt act in furtherance of the conspiracy is alleged and proved to have been done by the accused or a person with whom the accused conspired, subsequent to the accused's entrance into the conspiracy. For the purposes of this section, an overt act is substantial when it is of a character that manifests a purpose on the part of the actor that the object of the conspiracy should be completed.

{¶ 41} R.C. 2925.03(A)(1) defines trafficking in drugs and states as follows:

(A) No person shall knowingly do any of the following:

(1) Sell or offer to sell a controlled substance.

\*\*\*

(C)(4) If the drug involved in the violation is cocaine or a compound, mixture, preparation, or substance containing

cocaine, whoever violates division (A) of this section is guilty of trafficking in cocaine. The penalty for the offense shall be determined as follows:

*** 

(e) *** if the amount of the drug involved equals or exceeds ten grams but is less than twenty-five grams of crack cocaine, trafficking in cocaine is a felony of the second degree ***. If the amount of the drug involved is within one of those ranges and if the offense was committed *** in the vicinity of a juvenile, trafficking in cocaine is a felony of the first degree ***.

{¶ 42} Lastly, "an offense is 'committed in the vicinity of a juvenile' if the offender commits the offense within one hundred feet of a juvenile or within the view of a juvenile, regardless of whether the offender knows the age of the juvenile, whether the offender knows the offense is being committed within one hundred feet of or within view of the juvenile, or whether the juvenile actually views the commission of the offense."

{¶ 43} The evidence adduced at trial established all of the elements necessary to sustain Cox's conviction for conspiracy to commit trafficking in crack cocaine (at least ten grams but less than twenty-five) in the vicinity of a juvenile, in violation of R.C. 2923.01(A)(2) and 2925.03(A)(1). Initially, we note that both Younker and Rodriguez testified that Younker's two year old son was in the backseat of the vehicle where the drug transaction took place. Rodriguez testified that Younker informed her that Cox had crack cocaine for sale.

{¶ 44} Younker testified that she explained to Cox what Rodriguez wanted, and Cox indicated to Younker that he would provide that amount prior to the sale. Younker testified that Cox stated that while he had a portion of the crack cocaine in his possession, he would have to get the rest from his brother, Barnett. If Younker's testimony was deemed credible, then a jury could clearly find that a conspiracy clearly existed between Cox, Younker, and Barnett to facilitate and commit the sale of at least ten but not less than twenty-five grams of crack cocaine.

{¶ 45} Younker further testified that while they were on the way to the location of the drug transaction, Cox removed a baggie of crack cocaine from his pocket and handed it to his brother, Barnett, in the back seat of the vehicle. The evidence further established that Cox was present in the vehicle while the sale of the crack cocaine took place. Once the sale to Rodriguez was completed for $700.00, Cox distributed the drug money to Younker and Barnett, keeping $100.00 for himself. We also note that Det. Miller testified that on October 1, 2009, Cox stated that he was the "same dude you got it from the last time." Det. Miller testified that he understood this statement to mean that Cox was the individual who sold the crack cocaine to Rodriguez on September 21, 2009, when Det. Penrod was posing as Det. Miller's girlfriend to facilitate the drug transaction. Thus, a review of the record convinces us that the State's evidence, taken in its entirety, was sufficient to sustain Cox's conviction for conspiracy to commit trafficking in crack cocaine (at least ten grams but less than twenty-five) in the vicinity of a juvenile.

{¶ 46} Cox's conviction is not against the manifest weight of the evidence. The credibility of the witnesses and the weight to be given their testimony were matters for the court to

resolve. Cox presented no evidence at trial. Instead, Cox attempted to undermine the State's case by discrediting the testimony of Rodriguez and Younker. Specifically, Cox attempted to establish that Younker and Rodriguez were merely testifying against him to gain favor with the State in order to avoid additional prison time with respect to separate criminal charges they were both facing. Nevertheless, the jury did not lose its way simply because it chose to believe the evidence provided by the State's witnesses, namely Younkers and Rodriguez. Having reviewed the entire record, we cannot clearly find that the evidence weighs heavily against a conviction, or that a manifest miscarriage of justice has occurred.

**{¶ 47}** Cox's second and third assignments of error are overruled.

**{¶ 48}** Because they are interrelated, Cox's fourth and fifth assignments of error will discussed together as follows:

**{¶ 49}** "THERE WAS INSUFFICIENT EVIDENCE TO SUPPORT THE FINDING BY THE JURY OF GUILT AS TO COUNT II, COMPLICITY TO TRAFFICKING IN COCAINE."

**{¶ 50}** THE FINDING BY THE JURY AS TO COUNT II, COMPLICITY TO TRAFFICKING IN COCAINE WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE."

**{¶ 51}** In his fourth assignment of error, Cox asserts that the evidence adduced at trial was insufficient to sustain a conviction for complicity to trafficking in crack cocaine (at least ten grams but less than twenty-five grams) in the vicinity of a juvenile, in violation of R.C. 2925.03(A)(1). Additionally, Cox asserts that his conviction for said offense was against the manifest weight of the evidence.

{¶ 52} "Complicity" is defined in R.C. 2923.03 in relevant part:

> (A) No person, acting with the kind of culpability required for the commission of an offense, shall do any of the following:
>
> (2) Aid or abet another in committing the offense.

{¶ 53} The drug trafficking statute, R.C. 2925.03, provides in pertinent part:

> (A) No person shall knowingly do any of the following:
>
> (1) Sell or offer to sell a controlled substance.

{¶ 54} A person aids and abets the commission of a crime when he advises, supports, assists, encourages or cooperates with the principal offender, and shares the criminal intent of the principal offender. *State v. Johnson*, 93 Ohio St.3d 240, 2001-Ohio-1336, 754 N.E.2d 796. "Such intent may be inferred from the facts and circumstances surrounding the crime." *State v. Whitfield*, 2d Dist. Montgomery No. 22432, 2009-Ohio-293.

{¶ 55} Viewing the evidence in the light most favorable to the State, we find sufficient evidence to support Cox's conviction for complicity to trafficking in crack cocaine. As previously stated, Younker affirmatively testified that Cox was the source of the crack cocaine sold to Rodriguez on September 21, 2009. Younker also testified that while she and Barnett were paid for their role in the transaction, Cox kept $100.00 of the proceeds from the sale of the half-ounce of crack cocaine. Younker's testimony in this regard establishes that Cox assisted, facilitated, and/or promoted the commission of trafficking in crack cocaine. Without Cox's direct involvement in the drug transaction, the deal could not have been completed.

{¶ 56} Moreover, although Cox attempted to discredit Younker's testimony as fabricated and self-serving, the jury did not lose its way simply because it chose to believe her testimony regarding Cox's involvement in the transaction. Accordingly, Cox's conviction for complicity to trafficking in crack cocaine in Count II is not against the manifest weight of the evidence.

{¶ 57} Cox's fourth and fifth assignments of error are overruled.

{¶ 58} Because they are interrelated, Cox's sixth and seventh assignments of error will be discussed together as follows:

{¶ 59} "THERE WAS INSUFFICIENT EVIDENCE TO SUPPORT THE FINDING BY THE JURY OF GUILT AS TO COUNT III, POSSESSION OF COCAINE."

{¶ 60} "THE FINDING BY THE JURY OF GUILT AS TO COUNT III, POSSESSION OF COCAINE, WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE."

{¶ 61} In his sixth assignment of error, Cox argues that the evidence adduced at trial was insufficient to sustain a conviction for possession of crack cocaine (at least ten grams but less than twenty-five grams), in violation of R.C. 2925.11(A). Additionally, Cox asserts that his conviction for said offense was against the manifest weight of the evidence.

{¶ 62} To prove a violation of R.C. 2925.11(A), the State was required to prove beyond a reasonable doubt that Cox knowingly possessed a controlled substance, namely the crack cocaine sold to Rodriguez during the controlled purchase on September 21, 2009.

{¶ 63} Knowingly is defined in R.C. 2901.22(B):

A person acts knowingly, regardless of his purpose, when he is

aware that his conduct will probably cause a certain result or will probably be of a certain nature. A person has knowledge of circumstances when he is aware that such circumstances probably exist.

{¶ 64} "Possession" is defined in R.C. 2925.01(K):

Possess or possession means having control over a thing or substance, but may not be inferred solely from mere access to the thing or substance through ownership or occupation of the premises upon which the thing or substance is found.

{¶ 65} Possession of a drug may be either actual physical possession or constructive possession. *State v. Butler*, 42 Ohio St.3d 174, 538 N.E.2d 98 (1989). A person has constructive possession of an item when he is conscious of the presence of the object and able to exercise dominion and control over that item, even if it is not within his immediate physical possession. *State v. Hankerson*, 70 Ohio St.2d 87, 434 N.E.2d 1362 (1982); *State v. Wolery*, 46 Ohio St.2d 316, 348 N.E.2d 351 (1976).

{¶ 66} Readily usable drugs found in very close proximity to a person may constitute circumstantial evidence sufficient to support a finding that the person constructively possessed those drugs. *State v. Miller*, 2d Dist. Montgomery No. 19174, 2002-Ohio-4197. In determining whether a defendant knowingly possessed a controlled substance, it is necessary to examine the totality of the relevant facts and circumstances. *State v. Teamer*, 82 Ohio St.3d 490, 492, 696 N.E.2d 1049 (1998); *State v. Pounds*, 2d Dist. Montgomery No. 21257, 2006-Ohio-3040. The State may prove constructive possession

solely through circumstantial evidence. *State v. Barnett*, 2d Dist. Montgomery No. 19185, 2002-Ohio-4961. Circumstantial evidence and direct evidence have the same probative value. *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991).

{¶ 67} Younker's testimony was that on September 21, 2009, Cox handed the baggie of crack cocaine to Barnett immediately prior to their arrival at the McDonalds parking lot where the transaction was conducted. Moreover, after she returned from the vehicle in which Cox was present, Rodriguez had crack that she had just purchased therein. Det. Miller also testified that on October 1, 2009, Cox stated that he was the "same dude you got it from the last time," meaning the source of the crack cocaine from the controlled purchase on September 21, 2009. Viewed in a light most favorable to the State, this evidence establishes that Cox knowingly possessed the crack cocaine at issue in Count III. Additionally, we find that Cox's conviction for possession of crack cocaine in Count III was not against the manifest weight of the evidence.

{¶ 68} Cox's sixth and seventh assignments of error are overruled.

{¶ 69} Because they are interrelated, Cox's eighth and ninth assignments of error will be discussed together as follows:

{¶ 70} "THERE WAS INSUFFICIENT EVIDENCE TO SUPPORT THE FINDING BY THE JURY OF GUILT AS TO COUNT IV, TRAFFICKING IN COCAINE."

{¶ 71} "THE FINDING BY THE JURY OF GUILT AS TO COUNT IV, TRAFFICKING IN COCAINE, WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE."

{¶ 72} In his eighth assignment, Cox asserts that the evidence adduced at trial was

insufficient to sustain a conviction for one count of trafficking in cocaine (at least ten grams but less than one hundred grams), in violation of R.C. 2925.03(A)(1). Cox also argues that his conviction for said offense was against the manifest weight of the evidence. Specifically, Cox contends that the State failed to adduce sufficient evidence to prove that he offered to sell powder cocaine to Det. Miller. Cox also asserts that Det. Miller could not have been sure that the individual to whom he was speaking was Cox.

{¶ 73} Det. Miller testified that Cox initially offered to sell him ten grams of powder cocaine for $700.00. Det. Miller also testified that Cox's phone calls on October 1, 2009, came from Younker's phone number, and that the caller identified himself as "Twin," Cox's nickname. We note that at trial, Younker identified Cox's voice as the one on the recordings from the October 1, 2009, aborted drug transaction. After Det. Miller terminated the deal out of fear for his personal safety, Cox became relatively agitated, stating that he really wanted the drug sale to occur, even going so far as to lower the price while increasing the quantity of the cocaine he intended to sell to Det. Miller.

{¶ 74} Ohio Rule of Evidence 901(B)(5) states that authentication or identification of a voice may be done "by opinion based upon hearing the voice at any time under circumstances connecting it with the alleged speaker." On October 6, 2009, Det. Miller met with Cox in-person and spoke with him during that particular drug transaction. As a result, Det. Miller would be able to state his opinion on voice identification, thus identifying Cox's voice as the one on the recordings from the aborted controlled purchase on October 1, 2009. Viewed in a light most favorable to the State, the evidence adduced was sufficient to sustain Cox's conviction for trafficking in cocaine based on his offer to sell Det. Miller

approximately nine grams of powder cocaine on October 1, 2009.

{¶ 75} Moreover, although Cox attempted to undermine Det. Miller's testimony, the jury did not lose its way simply because it chose to believe his testimony regarding Cox's offer to sell nine grams of powder cocaine, as well as his identification of Cox as the individual speaking during the phone calls on October 1, 2009. Accordingly, Cox's conviction for trafficking in cocaine in Count IV is not against the manifest weight of the evidence.

{¶ 76} Cox's eighth and ninth assignments of error are overruled.

{¶ 77} Cox's tenth assignment of error is as follows:

{¶ 78} "THE TRIAL COURT ABUSED ITS DISCRETION BY NOT FINDING COUNTS IV, V, AND VI TO BE ALLIED OFFENSES OF SIMILAR IMPORT AT SENTENCING."

{¶ 79} In his tenth assignment, Cox contends that the trial court erred when it failed to merge Count IV with Counts V and VI at sentencing. Specifically, Cox argues that his trafficking in cocaine charge in Count IV was a product of the same conduct which formed the basis for the trafficking in crack cocaine charge in Count V. Accordingly, Cox argues that the trial court should have merged the counts.

{¶ 80} R.C. 2941.25, concerning allied offenses of similar import, provides:

> (A) Where the same conduct by defendant can be construed to constitute two or more allied offenses of similar import, the indictment or information may contain counts for all such offenses, but the defendant may be convicted of only one.

(B) Where the defendant's conduct constitutes two or more offenses of dissimilar import, or where his conduct results in two or more offenses of the same or similar kind committed separately or with a separate animus as to each, the indictment or information may contain counts for all such offenses, and the defendant may be convicted of all of them.

{¶ 81} "R.C. 2941.25 codifies the double jeopardy protections in the federal and Ohio constitutions, which prohibit courts from imposing cumulative or multiple punishments for the same criminal conduct unless the legislature has expressed an intent to impose them. R.C. 2941.25 expresses the legislature's intent to prohibit multiple convictions for offenses which are allied offenses of similar import per paragraph (A) of that section, unless the conditions of paragraph (B) are also satisfied." *State v. Barker*, 183 Ohio App.3d 414, 2009-Ohio-3511, 917 N.E.2d 324, (2d Dist.), ¶22, citing *State v. Rance*, 85 Ohio St.3d 632, 710 N.E.2d 699 (1999), overruled on other grounds by *State v. Johnson*, 128 Ohio St.3d 153, 2010-Ohio-6314, 942 N.E.2d 1061.

{¶ 82} In *Johnson*, the Ohio Supreme Court recently sought to clarify the process by which courts determine whether offenses are allied offenses of similar import. *Johnson* overruled *Rance* "to the extent that it calls for a comparison of statutory elements solely in the abstract under R.C. 2941.25." *Johnson* at ¶44. Now, "[w]hen determining whether two offenses are allied offenses of similar import subject to merger under R.C. 2941.25, the conduct of the accused must be considered." Id.

{¶ 83} *Johnson* states that "the intent of the General Assembly is controlling." Id. at

¶46. "We determine the General Assembly's intent by applying R.C. 2941.25, which expressly instructs courts to consider the offenses at issue in light of the defendant's conduct." Id. The trial court must determine prior to sentencing whether the offenses were committed by the same conduct. The court no longer must perform any hypothetical or abstract comparison of the offenses at issue in order to conclude that the offenses are subject to merger. Id. at ¶47 "In determining whether offenses are allied offenses of similar import under R.C. 2941.25(A), the question is whether it is possible to commit one offense *and* commit the other with the same conduct, not whether it is possible to commit one *without* committing the other. If the offenses correspond to such a degree that the conduct of the defendant constituting commission of one offense constitutes commission of the other, then the offenses are of similar import." Id. at ¶48 (internal citation omitted).

{¶ 84} "If the multiple offenses can be committed by the same conduct, then the court must determine whether the offenses were committed by the same conduct, i.e., 'a single act, committed with a single state of mind.'" Id. at ¶49 (citation omitted). "If the answer to both questions is yes, then the offenses are allied offenses of similar import and will be merged." Id. at ¶50. "Conversely, if the court determines that the commission of one offense will *never* result in the commission of the other, or if the offenses are committed separately, or if the defendant has separate animus for each offense, then, according to R.C. 2941.25(B), the offenses will not merge." Id. at ¶51.

{¶ 85} Upon review, it is clear that Count IV, trafficking in cocaine, was committed separately from Count V and VI, trafficking in crack cocaine and possession of crack cocaine, respectively. The conduct forming the basis of the offense in Count IV occurred

on October 1, 2009, when Cox offered to sell Det. Miller ten grams of powder cocaine for $700. Conversely, the conduct forming the basis of Counts V and VI occurred on October 6, 2009, when Cox actually sold Det. Miller seven grams of crack cocaine for $360.00. Simply put, these were different drug deals made on different days regarding different types of cocaine: powder cocaine on October 1, 2009, as opposed to crack cocaine on October 6, 2009. Thus, the trial court properly concluded that the offenses were not allied offenses of similar import and did not err when it refused to merge Count IV with Counts V and VI for the purposes of sentencing. Lastly, we note that the record supports the conclusion that the trial court properly addressed and completed its allied offenses determination prior to sentencing.

**{¶ 86}** Cox's tenth assignment of error is overruled.

**{¶ 87}** Cox's eleventh assignment of error is as follows:

**{¶ 88}** "THE DEFENDANT RECEIVED INEFFECTIVE ASSISTANCE OF COUNSEL IN FAILURE [sic] TO PROPERLY OBJECT TO THE ADMISSION OF THE AUDIO TAPE AS TRIAL EXHIBIT #1."

**{¶ 89}** In his eleventh assignment, Cox argues that he received ineffective assistance when his counsel failed to object to the admission of State's Exhibit #1, which contained recordings that were not admitted as testimony, nor authenticated by the State.

**{¶ 90}** "We review the alleged instances of ineffective assistance of trial counsel under the two prong analysis set forth in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), and adopted by the Supreme Court of Ohio in *State v. Bradley* (1989), 42 Ohio St.3d 136, * * * . Pursuant to those cases, trial counsel is entitled to a

strong presumption that his or her conduct falls within the wide range of reasonable assistance. *Strickland*, 466 U.S. at 688. To reverse a conviction based on ineffective assistance of counsel, it must be demonstrated that trial counsel's conduct fell below an objective standard of reasonableness and that his errors were serious enough to create a reasonable probability that, but for the errors, the result of the trial would have been different. *Id.* Hindsight is not permitted to distort the assessment of what was reasonable in light of counsel's perspective at the time, and a debatable decision concerning trial strategy cannot form the basis of a finding of ineffective assistance of counsel." (Internal citation omitted). *State v. Mitchell*, 2d Dist. Montgomery No. 21957, 2008-Ohio-493, ¶ 31.

**{¶ 91}** An appellant is not deprived of effective assistance of counsel when counsel chooses, for strategic reasons, not to pursue every possible trial tactic. *State v. Brown*, 38 Ohio St.3d 305, 319, 528 N.E.2d 523 (1988). The test for a claim of ineffective assistance of counsel is not whether counsel pursued every possible defense; the test is whether the defense chosen was objectively reasonable. *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052. A reviewing court may not second-guess decisions of counsel which can be considered matters of trial strategy. *State v. Smith*, 17 Ohio St.3d 98, 477 N.E.2d 1128 (1985). Debatable strategic and tactical decisions may not form the basis of a claim for ineffective assistance of counsel, even if, in hindsight, it looks as if a better strategy had been available. *State v. Cook*, 65 Ohio St.3d 516, 524, 605 N.E.2d 70 (1992).

**{¶ 92}** After a thorough review of the record, we conclude that Cox has failed to establish that he was prejudiced by his counsel's failure to object to the admission of State's Exhibit #1. Initially we note that the admissible portion of the evidence on the audiotape

comprising State's Exhibit #1 was played for the jury during trial. Additionally, while it is true that defense counsel did not object to admission of State's Exhibit #1, the record indicates that defense counsel entered into an agreement with the State whereby the tape would be admitted into evidence, but the bailiff would be instructed not to permit the jury to hear the portion of the tape which was inadmissible. On appeal, Cox does not argue that State's Exhibit #1 was inadmissible in its entirety. Rather, Cox contends only a portion of the tape was inadmissible, and it appears from the record that steps were taken to insure a portion of the tape was kept from the jury pursuant to the agreement between the parties. Cox does not argue that he was in any way prejudiced by the parties' agreement to instruct the bailiff not to allow the jury to hear the inadmissible portion of the tape, nor does he suggest that there was a breach of this directive. Thus, Cox has failed to establish that his counsel's performance was deficient. "Reviewing courts must indulge in a strong presumption that counsel's conduct was not improper, and reject post-trial scrutiny of an act or omission that was a matter of trial tactics merely because it failed to avoid a conviction." *State v. Reid*, 2d Dist. Montgomery No. 23409, 2010-Ohio-1686.

{¶ 93} Cox's eleventh assignment of error is overruled.

{¶ 94} Because they are interrelated, Cox's final two assignments of error will be discussed together as follows:

{¶ 95} "THE TRIAL COURT ERRED IN SENTENCING THE DEFENDANT TO A CONSECUTIVE SENTENCE WITHOUT SPECIFYING THE REASONS ALLOWED BY O.R.C. 2929.14(E)(4)."

{¶ 96} "THE TRIAL COURT ABUSED ITS DISCRETION IN SENTENCING

THE DEFENDANT TO A SENTENCE OF EIGHT YEARS ON COUNT II; FOUR YEARS ON COUNT IV; AND FOUR YEARS ON COUNT V, CONSECUTIVE TO ONE ANOTHER FOR A TOTAL OF 16 YEARS."

{¶ 97} In his final assignments, Cox contends that the trial court sentenced him to consecutive sentences which totaled sixteen years in prison without first considering R.C. 2929.14(E)(4).

{¶ 98} A trial court has broad discretion in sentencing a defendant and a reviewing court will not interfere with the sentence unless the trial court abused its discretion. *State v. Reese*, 2d Dist. Montgomery No. 21825, 2007-Ohio-6696; *State v. Durham*, 2d Dist. Montgomery No. 21589, 2007-Ohio-6262; *State v. Rose*, 2d Dist. Montgomery No. 21673, 2007-Ohio-4212; *State v. Slone*, 2d Dist. Greene No. 2005 CA 79, 2007-Ohio-130. The term "abuse of discretion" implies that the court's attitude is unreasonable, arbitrary, or unconscionable. *Adams*, supra. A court will not typically be found to have abused its discretion in sentencing if the sentence it imposes is within the statutory limits. *State v. Muhammad*, 8th Dist. Cuyahoga No. 88834, 2007-Ohio-4303; *State v. Burge*, 82 Ohio App.3d 244, 249, 611 N.E.2d 866 (1992).

{¶ 99} After *State v. Foster*, 109 Ohio St.3d 1, 2006-Ohio-856, 845 N.E.2d 470, and at the time of Cox's sentencing, trial courts were not required to make any findings or give reasons before imposing any sentence within the authorized statutory range, including maximum, consecutive, or more than minimum sentences. *Foster,* syllabus at ¶ 7. Courts, nevertheless, are still required to comply with the sentencing laws unaffected by *Foster*, such as R.C. 2929.11 and 2929.12 which require consideration of the purposes and principles of

felony sentencing and the seriousness and recidivism factors. *State v. Mathis*, 109 Ohio St.3d 54, 2006-Ohio-855, 846 N.E.2d 1. However, a sentencing court does not have to make any specific findings to demonstrate its consideration of those general guidance statutes. *Foster* at ¶ 42; *State v. Lewis*, 2d Dist. Greene No. 06 CA 119, 2007-Ohio-6607. And, where the record is silent, a presumption exits that the trial court has considered the factors. *State v. Adams*, 37 Ohio St.3d 295, 297, 525 N.E.2d (1988). Further, where a criminal sentence is within statutory limits, an appellate court should accord the trial court the presumption that it considered the statutory mitigating factors. *State v. Taylor*, 76 Ohio App.3d 835, 839, 603 N.E.2d 401 (2d Dist.1992); *State v. Crouse*, 39 Ohio App.3d 18, 20, 528 N.E.2d 1283 (2d Dist.1987). Consequently, the appellant has an affirmative duty to show otherwise.

{¶ 100} Initially, we note that pursuant to *Foster*, judicial fact-finding is not required before imposition of consecutive prison terms. Thus, the trial court was not required to make any findings under R.C. 292.14(E)(4) when it imposed consecutive prison terms in the instant case. Additionally, it is undisputed that the sentences imposed by the trial court were within the applicable statutory ranges for the offenses. Therefore, Cox's sentence was not contrary to law.

{¶ 101} Lastly, the trial court did not abuse its discretion when it sentenced Cox to an aggregate sentence of sixteen years in prison. The trial court noted that Cox had only been out of prison for five months and was on post-release control when he committed the instant offenses. Moreover, Cox had previously been incarcerated for first degree felony drug trafficking in the vicinity of a juvenile, the same type of crime for which he was convicted in the instant case. The trial court also noted that Cox had accrued sixteen

disciplinary violations during his previous period of incarceration, and had also failed to appear for trial court in the present case. We also note that the trial court affirmatively stated in its second amended judgment entry that it considered both R.C. 2929.11 and 2929.12 before imposing sentence. It is clear from the record that the trial court did not abuse its discretion when it considered the appropriate statutory factors before sentencing Cox to consecutive sentences.

{¶ 102} Cox's twelfth and thirteenth assignments of error are overruled.

{¶ 103} All of Cox's assignments of error having been overruled, the judgment of the trial court is affirmed.

. . . . . . . . . .

FAIN, J. and FROELICH, J., concur.

Copies mailed to:

Nathaniel R. Luken
Michael B. Miller
Hon. Stephen A. Wolaver